HEMPSTEAD
v.
WEED.        PLATT, J., delivered the opinion of the Court.   The ob-
jection to the parol evidence of the summons was properly
overruled.   The summons was in the possession of the de-
fendant, and the indictment was ample notice to produce it.
(*The People* v. *Holbrook*, 13 *Johns. Rep.* 90.)   But the evi-
dence, as detailed to us, does not contradict the supposition
that *Torry* filled up the summons in the presence of the Jus-
tice; and if so, there was no violation of the statute.   The
only question in the case turns on the fact, whether the Jus-
tice delivered the summons, signed by him, in blank, and to
be filled up by *Torry*, out of the presence, and beyond the
control of the Justice; or whether *T.* filled it up as the mere
clerk of the Justice.   The former would be a violation of
the statute; but the latter not so.   Upon the evidence re-
ported to us, we think there ought to be a new trial; and
that the proceedings should be remanded to the Court of
Sessions for that purpose.

---

HEMPSTEAD *against* N. and H. WEED.

'Where a new    IN ERROR, to the Mayor's Court of the city of *Albany.*
sheriff is ap-
pointed, the    The defendants brought an action of debt against the
prisoners re-   plaintiff in error, in the Court below, for the escape of *Wil-*
main in custo-
dy of the old   *liam Brown,* while in his custody, as sheriff, on a *ca. sa.*
sheriff, until
they are deli-  The declaration was in the usual form.   The defendant
vered to his    pleaded *nil debet,* with leave of the plaintiffs to give any
successor.
  If, therefore, special matter, which might have been pleaded, in evidence,
the old sheriff
omits to assign at the trial.   The record of the judgment against *Brown,*
over to the new
sheriff, a pri-  in the Court below, and the *ca. sa.,* and his arrest thereon,
soner on exe-
cution, who has been permitted  to go within the limits of the gaol liberties, on giving
security for that purpose, this is not an *escape,* for which the old sheriff is liable, as long as the
prisoner remains within the limits.
  The right of the old sheriff to assign over prisoners on civil execution, to his successor in of-
fice, being for his own security and benefit, may be waived by him; but the prisoners not de-
livered over, are to be deemed, to all intents and purposes, as in his custody; and, in case of
actual escape, he will be liable.

were given in evidence; and it was proved that *L. H. Gan-* sevoort was appointed sheriff of *Albany,* on the 6th of *March,* 1819, in the place of the defendant, *H.;* and *William Brown* was never in the custody of *G.,* the present sheriff, nor was he assigned to him by the defendant, when he delivered over the county and prisoners, nor at any time since. The indenture of assignment, from the defendant, to *G.,* the present sheriff, dated *March* 20, 1819, was given in evidence, by which it appeared that *Brown* was not named in it, or delivered over as a prisoner. It was·proved that *G.,* the present sheriff, after the assignment, on being asked whether *B.* was in his custody, answered, that he was not, and had never been assigned to him verbally, or otherwise. After the commencement of the suit against the defendant, he admitted that he had forgotten to assign *Brown* to the present sheriff.

It was proved, that when *Brown* was first arrested on the *ca. sa.,* he gave to the defendant the usual bond, for the liberties of the gaol, and was, thereupon, suffered to go within the limits of the gaol liberties; and that he had never been seen beyond the limits, except on *Sundays,* and still continued within the limits of the gaol liberties; and it appeared that the omission to assign *Brown* with the other prisoners, to the new sheriff, was unintentional. The defendant moved for a nonsuit, in the Court below; but the Court decided, that it was not necessary for the plaintiffs, to enable them to recover, to prove that *Brown* had been off the limits of the gaol liberties since his arrest, or that he was off the limits when the suit was commenced against the defendant, and refused to nonsuit the plaintiffs : and the defendant excepted to the opinion of the Court. The Recorder charged the jury, that the evidence, in his opinion, was sufficient to entitle the plaintiffs to recover ; and the jury found a verdict for the plaintiffs accordingly.

*Foot,* for the plaintiff in error, contended, that notwithstanding the commission to the new sheriff, and the *supersedeas* to the old, and the delivery of the gaol and prisoners to the new one, a prisoner, not delivered over, but remaining in gaol, continued, in judgment of law, in the cus-

NEW-YORK,
May, 1822.

HEMPSTEAD
v.
WEED.

tody of the old sheriff, and no action lies against him for an escape, until the prisoner in fact escapes. It is true, that such an omission of a prisoner by the old sheriff, is an inchoate escape; but it is not absolute, so as to give a right of action, until the prisoner has actually departed from the gaol.

*Buller (Nisi Prius,* 68.) says, " when a new sheriff is appointed, his predecessor ought to deliver over all the prisoners in his custody, charged with their respective executions, and if he omit any, it is an escape ;" and he cites, as his authority, *Westby's case,* 3 *Co.* 71. *Bacon* (2 *Bac. Abr.* 517. tit. *Escape in Civil Cases,* E.) says, " that the prisoners, until they are turned over to the new sheriff, remain in the custody of the old sheriff, and if he omits to deliver them over, every omission will be deemed an escape, wherewith he will be chargeable ;" and he cites *Hob.* 266. 2 *Roll. Abr.* 457. *Cro. Eliz.* 365. *Bulst.* 70. *Leon.* 54. 4 *Co.* 72. But 4 *Co.* 72. is a mistake, and was, no doubt, intended for 3 *Co.* 72., which is *Westby's* case. *Cro. Eliz.* is *Westby's* case in the K. B. 2 *Roll. Abr.* 457. is not applicable, as it merely decides that, if a prisoner escapes while the old sheriff is in office, he is chargeable, not the new sheriff. *Westby's* case, which is reported, also, in 3 *Danv. Abr.* 114. pl. 3. 2 *Vin. Abr.* 152. *Moore,* 688. and *Popham,* 85. A. D. 1592, was this : The prisoner was in custody on two executions ; one in favour of *Dighton,* and the other in favour of *Westby.* On going out of office, the defendants, the old sheriffs, assigned and delivered the prisoner to the new sheriffs, as in custody on the execution in favour of *D.* only. The prisoner actually escaped in the time of the new sheriffs, and the action was brought against the old sheriffs. The Court of K. B. decided against the old sheriffs, and said, " it was an escape in them presently ; for the prisoner, when he is delivered to the new sheriffs for one cause, although he is in execution for one cause, he is not for the other ; therefore, it is an escape in the ancient sheriffs, and they are forthwith chargeable therewith." *Coke,* in his report of *Westby's* case, in the *Exchequer,* says, that four points were unanimously resolved : 1. " That where the body of *B.,* the prisoner, was delivered to the new sheriffs, as in execution at the suit of *Dighton* only, he was thereby

out of the custody of the old sheriffs; and he could not be in the custody of the new sheriffs for the plaintiff's, (*Westby's*) execution, because he was not delivered to them, nor they charged with him for the plaintiff's execution." And to the question which was asked, " when the escape began in this case?" It was answered and resolved, " that, *eo instanti*, that the old sheriffs delivered their prisoners to the new sheriffs, they cease to have the custody of any of them, and, *eo instanti*, doth the escape begin as to the plaintiff." 2. " It was resolved, that till the prisoners are delivered to the new sheriffs, they remain in the custody of the old sheriffs, notwithstanding the new letters patent, the writ of discharge, and the writ of delivery." This is the only case on which *Buller* relies, in support of his unqualified position, and it is one of those cited by *Bacon*.

The next case cited by *Bacon*, is *Chandler* v. *Thompson*, (*Hob.* 266.) which did not concern this question; but in the debate on the subject, it was likened to "the case of a sheriff that doth not deliver the prisoner that he hath in execution to the new sheriff;" and the inference is, that if the old sheriff doth not deliver the prisoner to the new sheriff, he still remains sheriff as to him, so as to be chargeable as a sheriff for his escape. The next case cited by *Bacon*, is *Rex* v. *Morgan*, (*Bulst.* 70.) which merely decides, that if an old sheriff be removed before the return of a writ, the new sheriff is to make the return; and a reference is made to *Westby's* case, in which it was resolved, that after the election of a new sheriff, and before delivery over to him of the prisoners, they do remain in the custody of the old sheriff. The case of *Smallman* v. *Lanes*, (2 *Leon.* 54.) decided in 1587, five years before *Westby's* case, is also cited by *Bacon*. A *capias* had been delivered to the new sheriff against *L.*, and he informed the Court that *L.* was taken on an execution by the old sheriff, and held by him in prison at his own house, although all the other prisoners had been delivered to him; and, under the circumstances, he asked the advice of the Court what return he should make. But no particular direction was given him by the Court. *Anderson*, J. held, that the new sheriff might return, that *L.* was in his custo-

dy, and so charge himself; "for although the office of the old sheriff be determined, yet there is not any escape, as long as the party be in custody, and not at large." *Periam,* J. said, "it is an escape in the old sheriff, as soon as his authority is determined, and the prisoner not delivered." These are all the authorities cited for the doctrine as stated by *Bacon;* and it is submitted whether he or *Buller* are correct, or supported by the cases on which they rely.

But the matter was, afterwards, 1667, settled in the case of *Hanmer* v. *Winmer,* reported in *Sid.* 335. and 2 *Keble,* 224. The sheriff of *Gloucester* brought up *W.* on a *habeas corpus,* and moved the Court for their advice; for *W.* was in execution when *B.* was sheriff, and was left in gaol when *C.* was appointed, but was not turned over by indenture to *C.,* nor by *C.* to the present sheriff, but still was in gaol, and had been charged with a new execution while the present sheriff was in office, who was attached to return both executions, and he prayed that he might not be compelled to return the old one; and the Court were of opinion that he need not return it, and held, unanimously, that *W.* was in the custody of *B.,* the first sheriff, although his body was in custody of the present sheriff, because he had never been delivered over by indenture; and the difference between this case and *Westby's* case, the Court said, was, that there the prisoner was delivered over for one debt, but not for the other, and, therefore, there was an escape, as to that other; and it was agreed by the counsel and the Court, that *B.* should deliver *W.* over to the present sheriff, who should then make a return of both executions. In the case as reported in *Keble,* Chief Justice *Keeling* said expressly, that the omission by the old sheriff to deliver over the prisoner to *C.,* the second sheriff, was not an escape, so long as the prisoner remained in custody. In *Johnson* v. *Macon,* (1 *Wash. Rep.* 4.) decided in the Court of Appeals of *Virginia,* the suit was against the old sheriff for the escape of *S.,* a prisoner on execution, who had not been turned over, by assignment, to the custody of the new sheriff; and the Court held, that the plaintiff was bound to prove an *actual* escape of *S.* from the custody of the defendant, for the *actual* escape is the gist of the action.

Our statutes, on this subject, are similar to those of *Eng-*

*land,* and the *English* decisions are, therefore, applicable. It may, perhaps, be said, that in *Hanmer* v. *Winmer,* the prisoner was in close custody. But the gaol limits or liberties, by our statute, are no more than an enlargement of the walls of the prison.

*E. Baldwin,* contra, insisted, that if the old sheriff omits to deliver over the prisoners in custody on execution, with their respective executions, to the new sheriff, every omission is an *escape,* for which he is chargeable ; and he relied on *Bull. N. P.* 68. 2 *Bac. Abr.* 517. and the cases there cited, and *Impey's Off. of Sheriff,* 212. 216. The delivery to the new sheriff ought to be by indenture ; though the new sheriff may, if he pleases, accept the prisoners without an assignment. ( *Com. Dig.* tit. *Sheriff,* B 3. *Dalton's Sheriff,* 16. *Cro. Jac.* 588.)

After the writ of discharge is delivered to the old sheriff, his authority ceases ; (2 *Dyer,* 355. a. *Comyn's Dig.* tit. *Sheriff,* B 3.) and if he omits to deliver any prisoner, by indenture, to the new sheriff, an action of escape lies against him. (2 *Leon.* 54. 3 *Com. Dig.* tit. *Escape,* B 2. *Westley* v. *Skinner and another, Cro. Eliz.* 366. S. C. 3 *Co.* 72.) The regular and proper, if not the necessary course, is, for the old sheriff to assign over, by indenture, his prisoners to the new sheriff ; and this course has been recognised by this Court. ( *Richards* v. *Porter,* 7 *Johns. Rep.* 137. *Tallmadge* v. *Richmond,* 9 *Johns. Rep.* 85.)

It is objected, that an *actual* escape is necessary to make the sheriff liable. But in *Smallman* v. *Lane,* it is said, that " it is an escape in the old sheriff, as soon as his authority is determined, and the prisoner is not delivered." The true rule is, that the prisoner must be in the custody of a person having legal authority to confine him ; and when the authority to detain ceases, the escape takes place. In *Dalton's Sheriff,* (p. 16. and cases there cited,) it is said, " If the sheriff hath one in execution for debt, in another man's house, (and not in the gaol,) and the new sheriff will not receive the prisoner at that house, but in the gaol, and after the old sheriff hath a writ of discharge delivered to him, then the prisoner is, presently, out of execution, and this is

an escape in the old sheriff; and if he shall detain after he has his writ of discharge, the prisoner may bring his action for false imprisonment against the old sheriff." So, "if a gaoler make a prisoner in execution a turnkey, and he goes on an errand and returns, it is an escape." (*Cas. temp. Hard.* 310.)

If a woman is warden of the Fleet prison, and a prisoner marries her, it is a voluntary escape in the woman, for the prisoner cannot be under her power. (*Wood's Inst.* 77. 1 *Plowd. Com.* 37. *a.*) It is not the walls of the prison, but the prisoner's being in custody, that makes the prison. (*Hard.* 33.) The delivery of the sheriff, by a coroner, to the county gaol, and leaving him there, is an escape in the coroner. (6 *Johns. Rep.* 24. 9 *Johns. Rep.* 329. 1 *Bos. & Pull.* 24.) In *England*, every county has two gaols, one for debtors, which may be any house, where the sheriff pleases; and the other for criminals. By our statute, (1 *N. R. L.* 427. sess. 36. ch. 69.) particular gaols are designated in each county, for the imprisonment both of debtors and criminals; and by the act concerning sheriffs, &c., (1 *N. R. L.* 422. sess. 36. ch. 67.) the sheriffs of the several counties are required " to have the custody of the gaols and prisons, and the *prisoners in the same,* and to put in such keeper for whom they will answer." There cannot be two concurrent powers existing over the same prison. The case of *Johnson* v. *Macon* was governed by a statute of *Virginia,* and is not applicable here.

The doctrine of the common law, as laid down in the cases, is fully declared in the several statutes on the subject. In the first section of the act, (sess. 36. ch. 67. 1 *N. R. L.* 418.) the form of commission to the new sheriff, and the writ of discharge to the old sheriff, is given; and it is made the duty of the latter to assign over the county, &c. by indenture to the former. The bond required by the same statute to be given by the sheriff, for the faithful performance of the duties of his office, is in force only " during his continuance in office." By the constitution, a sheriff cannot hold his office more than four years, and in the present case, the constitutional term of the old sheriff had expired, and his authority ceased.

Prisoners in execution may be brought up on *habeas corpus*, directed to the sheriff or keeper of the prison; but to whom would such a writ be directed in this case? Could the old-sheriff take his prisoner again, if he actually escaped? Could he commit him to prison, if dissatisfied with the bond he gave under the provision of the act, for the liberties of the gaol? Would the sureties in such bond be liable, in any event, to the sheriff or the plaintiff, in case it was assigned? Has the gaoler a right to receive, or consider the party as a prisoner on execution? If a new execution should be issued against the prisoner, and delivered to the new sheriff, in whose custody would the prisoner be? If a writ of *habeas corpus* was delivered to the new sheriff, (the prisoner being in his custody also,) and the prisoner was removed, could the old sheriff avail himself of such writ, as a defence against an action for an escape?

Again; by the doctrine contended for by the plaintiff's counsel, the sureties for the gaol liberties would be deprived of the privilege of surrendering the prisoner in their discharge, as he is unknown to those having the custody of the gaol. If the plaintiff waits for an actual escape, which must refer back to a time when the defendant was sheriff, his right of action may be barred by the statute of limitations.

Upon delivering a writ to a sheriff against a prisoner, in actual custody, he is, by construction of law, immediately in custody on the second writ; (5 *Co.* 89.) but to whom is such writ to be delivered, in a case like the present? By the statute, (sess. 36. ch. 67.) every sheriff, officer, or keeper of any gaol, upon whom any copy of a declaration against a prisoner in his custody is served, must, in ten days thereafter, deliver it to the prisoner, under a penalty, &c. But to whom, in a case like the present, is a copy of a declaration to be delivered?

Again; the statute provides, in case of the death or removal of the sheriff, that the *under* sheriff shall execute his duties; and in case of the death or removal of both, the *coroner* shall execute the duties of the office, until a new appointment is made. This caution in providing for every possible contingency, shows that the legislature never in-

NEW-YORK, tended that a citizen should be deprived of his liberty, un-
May, 1822. less by an authorized and responsible officer. In case of the
HEMPSTE..D death of the present defendant, would the *escape* become
v.
WEED. complete, or who would have the custody of the prisoner ?

SPENCER, Ch. J., delivered the opinion of the Court. It ap-
pears to me, that the Court below erred. The case of *West-
by* v. *Skinner* and *Catcher*, (3 *Co. Rep.* 71. and *Cro. Eliz.*
365.) is the leading case upon this subject; and a correct
understanding of that case, will show that there was no es-
cape here. The bill of exceptions states, that the prisoner,
*Brown*, had never left the limits; that he had kept the con-
dition of his bond; and unless the omission, by the old she-
riff, to assign him over to his successor, was, *per se*, an es-
cape, there was no foundation for the action. In *West-
by's* case, the debtor was in the defendant's custody, on two
executions; one in favour of *Dighton*, the other in favour of
*Westby*. The debtor was delivered over by the defendants,
on their going out of office, by indenture, to the new sheriffs,
on the execution at the suit of *Dighton*, alone, omitting
*Westby's* execution; and, after this assignment, the debtor es-
caped. It was unanimously resolved, by the Court, that the
delivery of *Bustard*, the debtor, to the new sheriffs, as in ex-
ecution at the suit of *Dighton* only, he was thereby out of
the custody of the old sheriffs; and he could not be in cus-
tody of the new sheriffs, on the plaintiff's execution, because
he was not delivered to them, nor they charged with him,
on that execution. It was further resolved, that, till the pri-
soners are delivered to the new sheriffs, they remain in custo-
dy of the old sheriffs, notwithstanding the new letters patent,
the writ of discharge, and the writ of delivery. This case
has been very much misconceived: thus, in *Buller's Nisi
Prius*, 68. which is generally very correct, the case of *West-
by* is supposed to decide, that if the old sheriffs omit to deliver
over any of the prisoners, it is an escape. Other elementary
writers have fallen into the same mistake, as to the points
really decided in *Westby's* case, and the principle of that
decision. The opinion of the Court is so clearly expressed,
that language can scarcely make it plainer. The old she-
riffs having assigned the prisoner, on one of the two execu-

tions against him, had parted with the custody of him; but the new sheriffs having received him on one of the executions only, had not the custody of the prisoner on the execution of which they had no knowledge; so that he was out of custody on that execution, as respected both the old and new sheriffs, and, consequently, it was a legal escape. But that very case decides an important point, which controls and governs this case; that until the prisoners are delivered to the new sheriff, they remain in custody of the old sheriff, notwithstanding the commission of the new sheriff, and the writ of discharge and delivery.

In this case, then, *Brown*, who was never assigned, or delivered to the new sheriff, remained in the custody of the plaintiff in error, and it is not pretended that he ever escaped. Whilst the law required prisoners in execution to be kept in *arcta et salva custodia*, within the four walls of the prison, there might be some question, whether delivering over the gaol and all the prisoners, except one or more, the old sheriff had any such control over those not delivered over, as that they might be considered in his custody. It would be liable to the objection, that it was a divided authority; but under the existing law, where the debtor charged in execution has a right to demand the gaol liberties, when he gives security and is admitted to these liberties, (which was the prisoner's case,) all conflict of power, over a prisoner thus circumstanced, between the old and new sheriff, ceases, and then there exists no difficulty in the case.

In fact, the right of the old sheriff, to turn over his prisoners on civil executions, to his successor, is for his own safety and security; for we have seen, by the decision in *Westby's* case, that until that is done, the prisoners remain in the custody of the old sheriff. There is, then, no want of authority on the part of the old sheriff, to retain the custody. The principle is unquestionable, that when a sheriff has once begun to execute a writ of execution, he has, after he goes out of office, a right to complete the performance of his duty. This consideration shows, that when the law authorizes the old sheriff to assign over his prisoners on execution, to his successor, it is that he may be exonerated from any further charge or responsibility. The rule is introduced for the benefit of the

NEW-YORK,   old sheriff, and he may, if he pleases, waive the advantage
May, 1822.   of it.   Whether the old sheriff could commit the prisoner,
WARNER   if he ascertained that the sureties were bad, is another and
v.   distinct question; and should it be answered in the negative,
RACEY.   it decides nothing as to the present case.   It may be,
that he could not commit to the gaol of the county; and this
would be one of the risks and inconveniences in not assign-
ing the prisoner.   It was asked, whether, if *Brown* actually
escaped, the old sheriff would be liable? Undoubtedly, he
would be; for, as regards this prisoner, he is to be deemed, to
all intents and purposes, as in the custody of the old sheriff.

Judgment reversed.