NEW YORK,
May, 1835.

Partridge
v.
Westervelt.

PARTRIDGE & COLGATE *vs.* WESTERVELT.

An action does not lie against a *sheriff* for the escape of a prisoner in execution, arrested by his predecessor, and to whom a bond was given for the liberties, although the prisoner go at large off the liberties subsequent to the *new sheriff* taking charge of the jail of the county, if such prisoner has not been assigned by the *old sheriff* to the *new sheriff*.

The revised statutes, in giving the action for an escape against the *sheriff having charge of the jail*, have not changed the law as to the person against whom the action is to brought; but it is amended in one respect: formerly it was at the election of the old sheriff to assign his prisoners to the new sheriff; now it is made his duty to do so.

Until assignment, however, now, as formerly, the prisoners are considered in the custody of the old sheriff.

Whether the new sheriff would be liable for the escape of a prisoner in close confinement, happening after he takes charge of the jail, and previous to assignment—*quære*.

ERROR from the superior court of the city of New York. Partridge and Colgate sued *Westervelt*, sheriff of New York, in an action of debt for the *escape* of one *Kinmel*, who had been arrested on a *ca. sa.* by *James Shaw*, Esq., late sheriff of New York, and on his arrest, had given a bond for the liberties. The declaration set forth the judgment against Kinmel, the issuing of the *ca. sa.* and his arrest upon it by *Shaw*, the late sheriff, on the 4th December, 1830 ; and that upon such arrest he was detained, in the jail of the city and county of New York, *until the first day of January*, 1832, the time of the expiration of the office of Shaw, when Shaw delivered the charge of the jail to *Westervelt*, his successor. By means whereof Westervelt became liable to the plaintiffs in the execution for the safe keeping of Kinmel, and the custody of his body within the boundaries of the liberties of the jail ; and being so liable, he kept and detained Kinmel in his custody until the 7th January, 1832, when he suffered him to escape, and go at large out of his custody, and without the boundaries of the liberties of the jail, *he, the said Westervelt, then being such sheriff and having the charge of the jail;* and Kinmel accordingly escaped, leaving the debt for which he was committed unpaid ; whereby it was alleged an action had accrued to the plaintiffs against Westervelt, concluding in common form. The

defendant pleaded *nil debet,* and gave notice of special matter to be proved on the trial. The cause was tried in March, 1832. The plaintiffs proved the judgment and execution, and the arrest of the defendant by Shaw, late sheriff, on the 1st December, 1830, and then the following facts were shown : At the election, in 1831, the defendant Westervelt was chosen sheriff of New York, and entered on the discharge of his official duties on the 2d January, 1832, on which day Shaw, the late sheriff, delivered to him the custody of the jail of the city and county. Kinmel was not in actual custody, but out on a bond for the liberties, executed by him on the day of his arrest. Kinmel was not assigned by the late sheriff to the new sheriff, nor delivered up to the new sheriff until the 24th January, 1832, at which time he was assigned and delivered. Previous to that day, to wit, on the *seventh* day of January, 1832, this suit was commenced, on the allegation that Kinmel had escaped ; and it was proved that on the *first*, *fifth* and *seventh* day of January, Kinmel was *not within the liberties* of the jail, but on the contrary was upwards of 100 miles from New York. On this evidence the plaintiffs were nonsuited, and sued out a writ of error.

*NEW YORK, May, 1835.*

*Partridge v. Westervelt.*

*S. P. Staples,* for the plaintiffs in error. The only remedy of a plaintiff for the escape of his debtor, who has been committed to jail upon a ca. sa., is by action *against the sheriff in office* at the time of the escape. The action is expressly given *against the sheriff having charge of such jail.* 2 R. S. 437, § 63. By the statute, as it stood previous to the last revision, the action was given *against the sheriff to whom the ca. sa. was directed* upon which the defendant was arrested. 1 R. L. 425, § 19. The law therefore, has been changed. The fact of the defendant in execution having been admitted to the liberties of the jail does not affect the rights of the plaintiffs ; the liberties being considered a mere extension of the walls of the prison, 6 *Johns. R.* 121; and the escape of a prisoner thus admitted to the liberties differing in no respect from an escape in other cases. 10 *Johns. R.* 549 and 563. The pleadings put in issue the mere fact of the escape, and the judge therefore ought not to have nonsuited the plaintiffs, after having proved all that could be required of them under the pleadings,

Besides, if the action does not lie against the defendant, it cannot be maintained against any one ; for surely if the suit must be brought against the sheriff *having charge of the jail* at the time of the escape, it could not have been supported against the late sheriff, for his charge had ceased. Although the defendant in the execution was off the limits previous to the expiration of the term of office of the late sheriff, the plaintiffs were not bound to proceed upon such escape ; they had their *election* to proceed against either officer. 4 *Johns. R.* 469.

*S. Stevens*, for the defendant in error. From the case in 3 *Co.* 71, to that of *Hempstead* v. *Weed*, 20 *Johns. R.* 64, the law has been uniform and consistent, that a new sheriff is liable for the escape only of such prisoners as have been delivered over to him. Should the action in this case be sustained against the new sheriff, how is he to indemnified ?

*By the Court*, Savage, Ch J. It would seem to be unnecessary to enter into an argument, or produce an authority to show that the court below are right ; but as respectable counsel has argued the case with apparent confidence, it may be proper to show what the law always was on this point, and that it has undergone no change.

The defendant is sued for an escape. The very term *escape* presupposes that the person escaping has been within the custody and under the control of the officer. The debtor is placed in jail as a means of compelling payment of his debt to the plaintiffs. The officer must have the debtor in his custody, before there can be any default on his part. How could the new sheriff in this case prevent the escape ? He never had any control over the prisoner. You might with as much propriety put a *ca. sa.* into the sheriff's hands, against a person he never saw, and sue him immediately for an escape, because the man was at large, and the sheriff could not catch him. But it is argued that the prisoner was committed to the former sheriff, and has never been discharged ; and as the limits are but an enlargement of the four walls of the prison, the prisoner was within the walls on the 2d January, 1832, when the old sheriff surrendered, and the defend-

ant accepted the office. It is true that fictions of law are <span>NEW YORK, May, 1835.</span> sometimes indulged ; always however for the advancement of justice, and never when they will produce injustice. It <span>Partridge v. Westervelt.</span> was the doctrine of the common law, that the old sheriff must deliver by indenture all the prisoners in his custody upon execution, and till such delivery by him, they remain in custody of the old sheriff, and he shall be responsible for them. *Bacon's Abr. tit. Sheriff, I.* This point was expressly decided in the case of *Hempstead* v. *Weed*, 20 *Johns. R.* 64. The whole subject is there fully discussed, as to the liability of the old and new sheriff, and renders any further remark upon it unnecessary.

It is said, however, that the revised statutes have changed the law on this subject, and subjected *the sheriff having charge of the jail* to responsibility. The legislature have changed the phraseology, and have converted common law into statute law; and this, I believe, is the extent of the operation of the revised statutes on this subject. The revised laws, in so far as they are applicable to this case, 1 *R. L.* 425, § 19, directed that every person, arrested upon execution, should be committed to the custody of the sheriff to whom the writ was directed ; and if any such sheriff should permit any such person to go out of prison, without the assent of the plaintiff, he should be answerable for the debt and damages for which such person was committed. The language of the revised statutes on the same subject is as follows : "If any prisoner, committed to any jail in execution in a civil action, shall go or be at large, without the boundaries of the liberties of such jail, without the assent of the party at whose suit such prisoner was committed, the same shall be deemed an escape of such prisoner, and the sheriff having charge of such jail shall be answerable therefor to such party." 2 *R. S.* 437, § 63. This section manifestly presupposes that the person escaping had first been committed to the jail of the sheriff, before the sheriff having charge of such jail shall be answerable. But neither the letter nor the spirit of this section make it necessary to decide that the sheriff shall be answerable for the escape of a person who never was in his custody, and therefore never was in his jail ; much less is it proper to prosecute the

NEW YORK, present sheriff for an escape committed before he came into
May, 1835 office. The prisoner had escaped previous to the first of
January ; for he states himself, that on the 1st, 5th, and 7th
Partridge of that month, he was in the vicinity of Boston, more than
v.
Westervelt. 100 miles from the jail of which the defendant became the
keeper after the prisoner had escaped.

The revised statutes, 2 *R. S.* 438, *art.* 5, give directions
how, in case of an election of a new sheriff, the old sheriff
shall leave the office, and the new one succeed. The provis-
ions of the statute are not materially variant from the com-
mon law. It is made the duty of the old sheriff to assign to
the new sheriff the jail, the prisoners, and all papers relating
them, and all process not executed, nor begun to be exe-
cuted. Such was the duty of the old sheriff at common law,
and such was the practice. There is only this difference :
It was said in *Hempstead* v. *Weed,* that as the right of the
old sheriff to turn over the prisoners was for his advantage,
he might waive it if he pleased ; under the statute, he has
not now the liberty of doing so ; it is now his duty to assign
to them ; it is also his duty to assign all process unexecuted.
But suppose he neglects or refuses to do so, is the new sheriff
liable to an action for not serving a writ put into the hands of
his predecessor, but not delivered over to him ? Most certain-
ly not ; and yet a right of action in such a case would rest on
the same principle upon which this action does—that the par-
ty must look to the sheriff in office. The common law con-
sidered the prisoners in the custody of the old sheriff until
assigned to the new ; the revised statutes retain the same
principle. If the mere transfer of the office transferred the
prisoners, and made the new sheriff liable for the escape of
all the prisoners, whether formerly transferred or not, then
the assignment itself is a very idle proceeding. But it is not
so ; the sheriff is not answerable for prisoners not assigned
to him ; nor for omitting to serve process not delivered to
him. As to prisoners in close confinement, I give no opin-
ion ; I speak of those who have given bail, and are supposed
to be upon the limits. Until the assignment is executed, the
new sheriff knows not who have been committed, and who
have been discharged. The process authorizing their deten-

tion is not in his possession, but in that of his predecessor. He has no means of controlling such persons, and therefore is not answerable for them. The plaintiffs have a perfect remedy against the old sheriff, who cannot plead his failure to perform his duty as an excuse.

NEW YORK, May, 1835.

Judgment affirmed, with double costs.