## HINDS *vs.* DOUBLEDAY & McINTOSH.

On the election or appointment of a *new sheriff,* and the service of a certificate of the county clerk that the *new sheriff* has qualified and given the security required by law, the powers of the *old sheriff* cease within ten days after the service of such certificate, and all *prisoners* who *are not assigned* within that term, are at liberty to go at large ; the *new sheriff* has no control over them, and the powers of the *old sheriff* are at an end. The latter cannot in such case, even maintain an action on a bond for the liberties given by a prisoner not assigned.

In an action on a bond for the liberties, a plea that the prisoner remained a true and faithful prisoner to be a valid bar, must cover the whole time during which the sheriff remained liable ; it must, as in this case, be not only whilst he continued in office, and until a successor was appointed, but until the prisoners were assigned, or the expiration of ten days after the service of the certificate of the county clerk.

A plea that the prisoner escaped *after* the assignment by the *old* to the *new sheriff,* is a good bar to an action on a bond for the limits, and it is no answer to such plea that the prisoner *was not assigned* by the *old* sheriff, where no excuse for the omission is offered. Whether the *omission* to assign can be excused, *quere.*

If the *old* sheriff has a right of action on the limit bond, a recovery against the *new sheriff* for the *same escape,* is no bar. Nor is a *voluntary return* of the prisoner before suit brought *against the sheriff,* a bar ; a limit bond is not strictly a *bond of indemnity ;* the sheriff being liable to an action when an escape happens, may forthwith bring his suit.

In a suit on a bond for the liberties, it is no defence that no action was brought against the sheriff, *within a year after the escape ;* the *sheriff* may avail himself of such short limitation in an action against him, but not the *obligors* of the bond.

. Escape ; bond for the liberties ; old and new sheriff. The plaintiff, as *late* sheriff of the county of Broome, declared against the defendants on a bond for the limits, in the penal sum of $200, bearing date 4th March, 1831. The bond, after reciting that McIntosh was in custody on a ca. sa. at the suit of J. Bacon and others, for $89 30, and had been admitted to the liberties of the county, was conditioned that he should remain a true and faithful prisoner, and should not at any time escape, or go without the limits of the jail, until discharged by due course of law. The breach assigned was that McIntosh escaped. The defendants in their *third* plea alleged that *whilst the plaintiff continued in office* as sheriff, and until the appointment of a successor, McIntosh remained a true and faithful prisoner, nor did he during such period go at large, &c. To this plea the plaintiff replied that McIntosh did go at large before he was discharged by due course of law, concluding to the country. Demurrer and joinder. The defendants *fourthly* pleaded that *before suit* against the plaintiff, on account of any supposed escape, McIntosh *voluntarily returned* to the jail, &c. concluding with a verification. Demurrer and joinder. *Fifthly*, they pleaded that *no suit* was brought against the plaintiff, *within one year* from the time of the supposed escape. Demurrer and joinder. *Sixthly*, they pleaded that on 1st January, 1832, the term of office of the plaintiff, as sheriff, expired, that a *new sheriff*, to wit *James Stoddard, junior*, was elected in his place, who was duly qualified and gave the security required by law ; that the certificate of the clerk of the county, certifying those facts, was duly served on the plaintiff previous to the supposed escape, whereby the powers of the plaintiff as sheriff ceased ; and that afterwards and within ten days and *before* the supposed escape, the plaintiff delivered to *Stoddard*, his successor, the *jail* of the county, and all the *prisoners* then confined therein, and all *process*, &c. and that McIntosh was then a *prisoner* confined in the jail or within the liberties on the said ca. sa. To this plea the plaintiff replied that McIntosh was not *assigned* by him to his successor. Demurrer and joinder. *Seventhly*, they pleaded the same matter as in the *sixth* plea with the

additional facts, that in January term, 1832, the plaintiffs in the execution upon which McIntosh was in custody, brought a suit against Stoddard, *for the escape of McIntosh after the term of office of the plaintiff had expired,* (which was averred to be the *same identical escape* of which the plaintiff complained,) and such proceedings were had in that suit, that the plaintiffs therein, in October term, 1832, recovered a judgment, against Stoddard, for $134 06. To this plea the plaintiff put in the same replication as to the sixth, viz. that McIntosh *was not assigned* by him to his successor. Demurrer and joinder.

*S. Stevens,* for the plaintiff. An action lies at the suit of the *old* sheriff, for the *escape* of a prisoner previous to assignment, although after the appointment or election of a *new* sheriff. 20 Johns. R. 64. The *new* sheriff is not liable for such escape. 13 Wendell, 500. It is no defence that the sheriff has not been sued, nor is it an answer by the prisoner that he voluntarily returned before the sheriff was sued. The sheriff may plead such fact in bar of a recovery against him, but the prisoner or his bail cannot avail himself of it. Nor is a recovery against the *new* sheriff a bar to an action by the *old* sheriff.

*J. A. Collier,* for the defendant. The replication to the *third* plea is bad in not specifying *time* or *place ;* this defect is pointed out by special demurrer and therefore must prevail. The *fourth* plea is good ; the limit bond is a mere *bond of indemnity,* 10 Johns. R. 563, and a plea of *voluntary return* is expressly authorized by statute. 2 R. S. 435, § 48. So the *fifth* plea is good ; it is demurred to specially because it states two facts, viz. that the prisoner did not escape within one year before the commencement of this suit, *and* that no suit was brought against the plaintiff within one year after the escape. The plaintiff might have taken issue upon either of the averments ; There was no necessity for a demurrer, nor was the plaintiff bound to demur. 13 Wendell, 633. The *sixth* and *seventh* pleas set up a perfect bar to a recovery, and the replications alleging that the prisoner

was not assigned are no answer. An *omission of duty* by a public officer can give him no rights. If the plaintiff neglected his duty to assign the *jail* and *prisoners*, the new sheriff might notwithstanding take possession of the jail and assume the charge of the prisoners. The case of *Partridge* v. *Westervelt*, 13 Wendell, 505, admits that the old sheriff cannot plead his omission of duty. In that case my learned opponent asked, 'Should the action be sustained against the *new* sheriff, how is he to be indemnified?' Country counsel have answered him, 'borrow your neighbor's bond of indemnity.' After a suit against the *new* sheriff, the *old* sheriff cannot be sued for the same escape. 7 Wendell, 455. 2 R. S. 296, § 91.

*Stevens* in reply. *Venue* and *time* cannot be objected to any pleading of the plaintiff subsequent to the declaration. If a prisoner returns before suit against the sheriff, he may under a plea of *non damnificatus* show the fact in mitigation of damages, but cannot plead it in bar. The omission to assign will not protect the *old* sheriff against a suit, and being liable to a prosecution, he may bring an action upon the limit bond. The recovery against the *new* sheriff is no bar; it should have been given in evidence under a plea of *non damnificatus*. Where the jail, prisoners and process, &c. are assigned, the limit bond may be sued by the *new* sheriff.

*By the Court*, BRONSON, J. Under the former law, a writ of *discharge* was delivered to the old sheriff, commanding him that by indenture he deliver to his successor, " the county, with the appurtenances, together with the rolls, writs, memorandums, and all other things touching that office which are in his custody;" and thereupon the office of the old sheriff was at an end. 1 R. L. 418, § 1, 4, 5. Notwithstanding the imperative language of the writ, it was said in *Hempstead* v. *Weed*, 20 Johns. R. 64, that the right of the old sheriff to turn over his prisoners on civil executions to his successor, was for his own safety and security ; that the rule was introduced for his benefit, and he might, if he pleased, waive the advantage of it. It was accordingly held,

that the old sheriff was not chargeable with an escape, when on going out of office, he had by mistake neglected to assign to his successor one of the prisoners on the jail limits ; but that the prisoner still remained *in his custody*, on the principle that when the sheriff has commenced the execution of final process, he may complete it after his office is at an end. In *Partridge* v. *Westervelt*, 13 Wendell, 500, it was decided, that a prisoner on the jail limits, who had not been assigned to the *new* sheriff, was not in the custody of the *new* sheriff, and consequently that he was not charge-able for an escape of the prisoner, although it happened in his time ; but that the remedy of the creditor was against the old sheriff, who could not plead his failure to perform his duty as an excuse. In this case, the 'late chief justice expressed the opinion, that the turning over of prisoners was no longer a privilege which the old sheriff could waive, but that it was now his duty to assign them.

The language of the present statute is certainly imperative in its form—the former sheriff *shall* deliver to his successor the jail and the prisoners. 2 R. S. 438, § 69. Although this language may not be stronger than that in the former writ of *discharge*, I think it not only confers a benefit, but imposes a *duty* on the old sheriff ; and I am not prepared to say that he can sue for an escape, where he is driven to the necessity of alleging his own breach of duty by way of making title to the action. But if there can be a good excuse for not assigning, as that a particular prisoner was omitted by mistake, the sheriff should show the excuse.

But the difficulty presents itself in another form. Although under the old law, the sheriff, when he had commenced the execution of final process, might complete it after his office was at an end, and although he may do so still in relation to executions against *property*, yet he cannot, I think, do so where the final process is against the *body* of the debtor. A certificate from the county clerk, that the new sheriff has qualified and given security, has taken the place of the old writ of discharge. 2 R. S. 438, § 67. Upon service of the certificate on the former sheriff, the

statute declares, that " his powers as such sheriff, except when otherwise expressly provided by law, shall cease ;" (§ 68) ; and I find no provision which will authorize him to continue the execution of process on which any person is in his custody as a prisoner. The exception in the last clause of the 69th section, and the power to proceed, given by the 71st section, are both evidently confined to final process against the *property*, not the *person*, of the debtor. And besides, it is made the duty of the sheriff to deliver to his successor, *the jail* of the county, with its appurtenances, *all the prisoners* then confined in such jail, and *all process*, orders, &c. in his custody, *authorizing or relating to the confinement of such prisoners.* § 69. On reading the 68th, 69th and 71st sections together, I am unable to resist the conclusion, that the legislature intended the powers of the old sheriff in relation to all prisoners in his custody should cease within ten days after the service of a certificate that the new sheriff had entered upon the duties of his office. If the common law power of the old sheriff to continue the execution of final process against the body is taken away by this statute, as I think it is, prisoners who are not assigned within the ten days will be at liberty to go at large. The new sheriff has nothing to do with them, and the power of the old sheriff is at an end. If he cannot enforce the imprisonment by direct means, he cannot do it indirectly, by suing the bond which was given while the restraint was legal.

It remains to apply what has been said to the questions presented on the third, sixth and seventh pleas.

1. The *third* plea is not broad enough to constitute a bar. The allegation is, that *McIntosh* remaining a true and faithful prisoner " during the period when the plaintiff continued in office as such sheriff, and until a successor was appointed in his place." The plaintiff was not in office as sheriff after the certificate was served by the new incumbent ; still his power over the prisoners necessarily remained for ten days afterwards, if they were not sooner assigned. The plea, therefore, comes short of showing that *McIntosh* was

not in the plaintiff's custody at the time of the escape. The second branch of the plea is subject to the same objection.

2. The *sixth* plea states in substance, that before the escape, the plaintiff had been served with the certificate required by the statute; and that within ten days thereafter, and before the escape, the plaintiff delivered the jail and all the prisoners, including *McIntosh*, to *Stoddard*, the new sheriff. This is a good bar. After the plaintiff had delivered the jail and the prisoner, it is obvious that he could have no further authority over him. The new sheriff was then answerable for the safe keeping of the prisoner. The replication is, that *McIntosh* was not assigned. It was the plaintiff's duty to deliver over all the prisoners, and whether he did so or not, his power of restraining them could not continue beyond the ten days. Whether there can be a good excuse for omitting the transfer, need not now be considered, for no excuse whatever is set up by the plaintiff.

The *seventh* plea contains the same matter as the sixth, and there is only one replication to both. The replication is of course equally bad as to both pleas. The additional matter in the seventh plea—that the creditors of *McIntosh* treated him as in custody of the *new* sheriff, and sued and recovered a judgment against the new sheriff for the same escape of which the plaintiff complains, amounts to nothing. If *McIntosh* was in the plaintiff's custody at the time of the escape, the plaintiff has a right of action against the bail, and if the new sheriff has suffered a judgment which he might have avoided, that cannot prejudice the plaintiff. But this additional matter is surplusage merely, and can do no harm. The plea contains enough without it, and the replication does not give a sufficient answer.

3. The *fourth* plea sets up a voluntary return by *McIntosh* to the jail liberties, before any suit was commenced *against the plaintiff*. The plea which the statute authorizes would be, a voluntary return of the prisoner before suit brought *against the bail*, on their bond to the sheriff. 2 R. S. 435, § 48. This section has turned the case of *Barry* v. *Mandell*, 10 Johns. R. 563, into statute law. The plea is quite wide of the mark.

But is said that the bond is one of indemnity, and that if there was a return before suit brought against the plaintiff, he cannot have been damnified. This is not strictly a bond of indemnity. When the prisoner escaped, the sheriff was not bound to wait until he was sued, but might immediately take his remedy for a breach of the condition of the bond; and besides, the sheriff is liable to the creditor the moment the escape takes place. He need not wait for an action, but may discharge his liability without it. It does not follow, therefore, that the plaintiff has not been damnified, because he has not been sued. The plea cannot be maintained.

4. By the *fifth* plea the defendants have attempted to avail themselves of the short limitation which the statute has given *to the sheriff* in actions against him for escapes on civil process. 2 R. S. 296, § 21. There is no such limitation in favor of *the bail.* So far as the plea rests on the assumption that this is only a bond of indemnity, it is sufficiently answered in what has been said concerning the fourth plea.

The result is, that the plaintiff is entitled to judgment on the third, fourth and fifth pleas; and the defendants are entitled to judgment on the sixth and seventh pleas.