By the Court—Robertson , J.
Before the revision of the statutes of this State in 1830, a retiring Sheriff was only relieved from the custody of prisoners by a writ of discharge, the form of which was prescribed in the same statute with the commission to the new Sheriff. (1 Rev. Laws, 418, §§ 1, 5.) The transfer of such custody to the succeeding Sheriff was then not a duty, but the privilege of the outgoing officer for his own protection. (Hemstead v. Weed, 20 Johns., 73.) A contrary doctrine had previously been laid down by Bacon in his Abridgment, (vol. 2, p. 517, Escape in Civil Actions,) which was not sustained by the authorities cited by him therefor. One of the resolutions in Westbre’s Case, (3 Rep., 72,) incorrectly cited in Buller’s N. P., (p. 68,) fully sustained it, however, and it was accordingly so held in the case just referred to. (20 Johns., 73.)
In that case, also, Spercer, J., in delivering the opinion of the Court, draws a distinction between prisoners in close custody and those on the limits or jail liberties, and holds that, as to the latter, all conflict of power between the two. Sheriffs ceases. He adds, “ that there is no want of authority on the part of the old Sheriff to retain the custody.” He then declares the question of the right of the Sheriff to commit to prison in case the sureties for the limits are bad, to be quite another and distinct one, and intimates that perhaps he could not commit to the jail of the county, but concludes that such inability might be merely one of the inconveniences and risks which he would escape by assigning prisoners who were not in jail at the end of his term.
Being at large within the jail liberties, which never was an escape on mesne, nor perhaps even on final process, is expressly declared not to be so by statute. (2 R. S., 434, *575 1st ed., 47.) The phrase, “ any prisoner who would be entitled to the liberties of any jail, upon executing such bond,” is declared by the Revisers to have been inserted in that provision to remove a doubt suggested in 9 Johns., 84, and 7 Id., 479, 3 R. S., 2d ed., 746, app. A new provision was also added in the same article, (2 R. S., 434, $ 44,) allowing a Sheriff to recommit a prisoner in case his sureties for his remaining on the jail liberties should prove insufficient. That was a slight variation of an existing provision. (1 Rev. L., 429, § 6.) There is no provision for a commitment to close custody, in any other case. The power of the Sheriff to admit a prisoner to the jail liberties without taking a bond, which is now made statutory, (2 R. S., 437, §§ 62, 63; 3 Id., 737, 5th ed.,) is given as a reason, in the Revisers’ notes, (3 R. S., 2d ed., 748, app.,) for limiting his liability for an escape on mesne process to actual damages. (1 Rev. L., 425, § 19.)
The article of the Revised Statutes which is supposed to have changed a retiring Sheriff’s privilege of assigning prisonersflon the limits, to a duty, so as to make him liable absolutely, as on an escape, for the debt for which they are imprisoned, will be found, on examination, not to have made any such marked changes in the previous law as to show an intention to' produce such a result. (2 R. S., P. III., Ch. VII, Tit. 6, Art. 5.) The first section of that article (2 R. S., 438, § 67; 3 Id., 5th ed., 737, § 88) provides for the service on the old Sheriff, instead of a writ of discharge, of a county clerk’s certificate that his successor had qualified. The next section (§ 68) declares that upon the service of such certificate the powers of the old Sheriff, except where excepted by law, shall cease. This language is not stronger than the 5th section of the former statute in reference to the effect of a writ of discharge. (1 Rev. L., 418.) This provision, literally construed, without the exceptions contained in it, would make every writ directed to him fall powerless from his hands, allow prisoners in his custody to escape, and render him functus officio, officially dead. But the exception, properly construed, will *576 "be found large enough to include everything to prevent such disastrous results. These two sections (67 and 68) are avowed by the Revisers to be a mere substitute for a writ of discharge. (3 R. S., 2d ed., 748,- app.) The next section gives the old Sheriff ten days in which to deliver to his successor the jail with its contents, prisoners confined therein and official documents in his hands. This certainly must be one of the exceptions to the previous section, alluded to therein, because it assumes that the custody of such jail, contents, prisoners and documents, still remains with the old Sheriff until the end of the ten days. This is stated in the Revisers’ notes to have been simply declaratory, (3 R. S., 2d ed., 748, app.,) and collected from various authorities which they furnish. Both it and the next section (§ 70) are also said therein to have been inserted merely to remove doubts and settle difficult questions raised in old cases which are therein referred to; the case for which the 70th section is intended, is mentioned therein. as being in 7 Johns., 138. Hone of such cases, authorities or questions, relate to the delivery of prisoners on the limits. The 71st and 72d sections, which relate to the execution of unexecuted process, are , the only new provisions, and so avowed to be. (3 R. S., app., ubi si{p.)
The article of the Revised Statutes containing the sections under discussion, is entitled merely, “Proceedings on the election or appointment of a new Sheriffthe title of that which immediately precedes it is, “ Of escapes and the liabilities of Sheriff therein.” It is not, therefore, in the former that we should expect to find a provision to make a Sheriff liable for an escape or quasi escape. Hor is there anything in that article indicating such an intention, unless by the 68th section of it, the power of the old Sheriff to detain prisoners until delivered or assigned to his successor, is taken away eo instanti on the service of a certificate, or is only prolonged by the 69th for ten days, at the end of which time there is to be a general jail delivery. But, by the 73d section, the new Sheriff has a right *577 to take possession, of the jail, its contents, prisoners confined therein, and official documents, after the ten days; and yet, under the doctrine contended for, such prisoners are supposed to be out of every one’s custody, by force of the previous 68th and 69th sections. The legal mode of the new Sheriff’s obtaining possession of such building, documents and persons, is declared to be the same as that of getting possession of books and papers. (1 R. S., 124.) That mode is the commitment of the delinquent officer until he delivers up what is demanded, and the issuing of a search warrant to seize and bring it before the inquiring officer, who is to cause the same to • be delivered to the complaining party. That presupposes a custody by the retiring officer of whatever he possessed by virtue of his office, and a capability of its being delivered to his successor. The law did not intend that a prisoner legally • free and unlawfully held in custody by the old Sheriff, should be handed over to his successor by means of such proceedings. Prisoners confined in jail were, therefore, legally detained in custody by a retiring Sheriff until he delivered them to his successor. Prisoners on the limits were equally in his legal custody, and he was responsible for their remaining there, unless the sureties became insufficient, and he had a right to rearrest them and deliver them to his successor. The same' sections of the same article were interpreted by a former eminent Chief Justice of the former Supreme Court of this State, (Savage, J., in the case of Partridge v. Westervelt, 13 Wend., 500,) as not containing provisions materially variant from Ihe common law. He noticed the only deviation from it in thereby making the transfer of the prisoners no longer a privilege but a duty; and he held specifically that the Revised Statutes retained the principle of the common law as to prisoners at large on the liberties remaining in custody of the old Sheriff until assigned to the new one. He declined to give any opinion, however, as to those in close' confinement. It is clear that “the jail” spoken of, both in section 69 and section 73, is the building, be *578 cause those sections also speak of “its contents;” the words “confined therein,” used in such sections, could also only apply to prisoners in close custody. Indeed, no delivery could well he made of “ the liberties
Hinds v. Doubleday, (21 Wend., 223,) is cited as authority for the doctrine that an omission by a retiring Sheriff to assign a prisoner on the limits, for ten days after service on him of a certificate of his successor having qualified, is an escape. That was' an action, by the retiring Sheriff, ■ against sureties on a limit bond, for an escape after the end of his official term. The election and qualification of a new Sheriff, service upon the plaintiff of the proper certificate thereof, and the delivery to the former by the latter, of all prisoners confined in jail, including the prisoner in question, were pleaded in bar. To this the plaintiff replied, that he had not assigned such prisoner to his successor. The only question, therefore, which could arise on such pleadings was, whether the delivery of the prisoner to the new Sheriff, without an assignment, took him out of the custody of the old, so as to relieve him from the consequences of an escape; and this was the only point upon which the Court was bound to pass. It held the pleas to be a good bar, because the Sheriff had lost all control over the prisoner by the delivery merely of him to his successor, to whom alone the responsibility of his safe keeping would attach. The replication was disposed of by saying that the control of the plaintiff could not continue beyond the ten days mentioned in section 69, and no excuse was shown for not executing an assignment. If any excuse had been admissible, the liability of the plaintiff in that case for a constructive escape, in not either delivering or assigning, might not have been absolute, and of course his control of the prisoner might have continued longer than such ten days. It is true that the learned Judge (Beoxsost, J.) who decided that case, incidentally discussed the effect of the omission of an old Sheriff to deliver his prisoners to his successor in ten days after service of a certificate, and concluded that the 68th, *579 69th and 71st sections of the article of the Bevised Statutes, already alluded to, took away all powers from the retiring Sheriff, instantly on the service of the certificate in the 68th section, laying stress on the language of that section. But that position, in fact, proves too much, as it proves the instantaneous paralysis of the authority of the old Sheriff on service of the prescribed certificate. But the same learned Judge took no notice of the exception contained in such section, or of the 73d section; and did not undertake to point out how a prisoner at large in the liberties upon a bond is to be committed to close custody, by the Sheriff who originally arrested him, while his sureties are sufficient; nor is anything said of illegal detention. He was also silent as to the custody of the prisoners during the interregnum of ten days, or until the delivery to the new Sheriff. The law cannot require the violent capture by the old Sheriff of parties on the limits, in order to put them into jail; or, if so, permit a new Sheriff thus to get possession of those thus illegally detained in jail by its delivery. The whole of such discussion, which was imma- ■ terial to the real point in the case, overlooked the most important and controlling provisions in the statute. I cannot, therefore, consider the case of Hinds v. Doubleday as overruling the views of Ohief Justice Savage, in Penbridge v. Westervelt, (ubi sup.,) in regard to the authority of retiring Sheriffs over prisoners at large in the jail liberties, or as establishing that the Bevised Statutes intended to abolish the rule in Hempstead v. Weed, (ubi sup.)
Besides this, the Bevised Statutes expressly provide that going at large on the jail liberties shall not be an escape. (2 E, S., 434, § 47; 3 Id., 5th ed., 734, § 68.) They also define what an escape is, (2 B. S., 437, § 63; 3 Id., 5th ed., 736, § 84,) and do not provide for the recovery of any damages unless for wandering beyond the limits of such liberties. In this case the prisoner in question (White) never was beyond the limits. The new Sheriff had as much right to take him as the old, if the latter had actually lost his custody and could not commit him. In so extensive *580 liberties as exist in this country, it would be rigorous to require a Sheriff to hunt up, in ten days, a prisoner concealed within them, or to pay the debt.
The liability of the defendant in 'this case, therefore, was clearly not for an escape, and the rules applicable to such a liability are not strictly applicable to it.
This Court, when this case was before it at Special Term on demurrer, put such liability on the ground of a breach of duty by violating the statute, for which nominal damages at least were recoverable. (4 Bosw., 649.) Of course, for an escape, unless the party was entirely insolvent, the damages could not be reduced to that extent, as was held in two cases in the same volume. (Renick v. Orser, 4 Bosw., 384; Loosey v. Orser, Id., 391.) The learned Judge who delivered the opinion on such occasion admitted the possibility of a diminution or reduction of damages by the detention of the prisoner by the new Sheriff if he remained in his custody, or by his taking him under the 73d section, to the extent of even an absolute annihilation of them. This, perhaps, is an ingenious and the only mode of reconciling the provisions of the 73d section with the views of Judge BROirsosr, in Hinds v. DouMeday, which wholly ignore its existence, and rest on the 68th section for support. It may be doubted whether the failure by the retiring Shériff to deliver a prisoner can, as towards any one but his successor, be considered a breach of a duty imposed by a part of a statute entitled “ of proceedings on the election of Sheriffs,” unless by the most express enactment of liability, and whether all liability for any failure of duty in regard to the custody of a prisoner to a party at whose instance such prisoner is under arrest, was not intended to be disposed of in a previous part of the same statute entitled of escapes and the liability of Sheriffs thereon. It is not very easy to determine what is the measure of damages for such a breach of duty to such party, if it exists. Of course, the only injury which could arise therefrom must be the prisoner’s remaining in the custody of the old Sheriff rather than the new, in which only the *581 comparative vigilance or responsibility of the two Sheriffs would be concerned, and the plaintiff could only be damnified by the loss of any superiority of the new Sheriff in that respect.
Although strongly impressed on the trial with the belief that the defendant was not liable at all, I deferred to the authority of the decision in this Court made in this case and just referred to, and, therefore, abstained from charging that the omission of the defendant had produced an escape. One of the requests of the plaintiff’s counsel to charge was, “ that the defendant is prima facie liable for the amount of the original judgment.” The instruction given was, that where the plaintiff has utterly lost his remedy against the party charged, and there is no evidence to show that he was not worth the amount, the law presumes he has lost his whole debt, and he is entitled to recover the whole amount. Also, that the question was how much the plaintiff had lost, which he could have obtained by the prisoner remaining in custody (of the defendant) until the beginning of this suit.. Further, thát “in an ordinary case of escape, * * where there is no “ evidence that the judgment against the prisoner would “not have brought the full amount, the plaintiff is enti- “ tied to recover the full amount.” Moreover, that “ if the “ Jury thought the coercion of the party, from the time of “ the failure to assign to the commencement of the suit, “ would have brought the money from him, the plaintiff “ had suffered damage to the full amountand, finally, that they were to consider the responsibility of the party in custody, in determining how far his detention in jail would have brought the money from him before the commencement of this'action. These were much more liberal rules in the plaintiff’s favor than, in my view at present, he was entitled to. Olearly, the omission to deliver, unless it amounted to an escape, did not charge the defendant prima facie with the whole debt. There was no evidence that such omission merely was the cause of such a loss, or, indeed, of any injury. Probably, under the decision at *582 Special Term already adverted to, the proper instruction would have been that the plaintiff, having proved no special damage by the supposed breach of duty to him, was only entitled to nominal damages.
Exceptions were, however, taken by the defendant’s counsel, to what he termed such parts of the charge as stated “ that the plaintiff had a right to issue a new execution, and that either that right, or the omission to “ issue such execution, or the possibility of taking White “ (the prisoner) on it, could affect the question of damages “ or enter into the consideration of the Jury; and that the “ object of an execution against the person is to coerce “payment, and that the plaintiff’s loss could be deter- “ mined with reference to, or be affected by, such power “ of coercion, or that the effect of an execution against “ the person, as causing such coercion, could affect the “ question of damages.”
In reference to a new execution, the charge to the Jury as, in substance, merely that the plaintiff, in an action /or an escape, might possibly, if he chose, exercise the same coercion, by obtaining the same control over the prisoner’s body by a new execution as he had by the old, and such possibility might be taken into consideration; that they, however, had a right to take into consideration, in the case before them, “ that the party had been within reach “ of process, by which the plaintiff might have taken him “into custody.” Bothing was said of a new execution. The phrase beginning, “ but you have a right to take into consideration the fact that the plaintiff might possibly have recovered the amount of the judgment,” &c., is evidently, from the use of the word “ but,” a mere qualification of the preceding statement of the rule in case of an escape. The words “plaintiff,” “judgment,” and “his body,” plainly refer to the imaginary case of escape only Indeed, “ his ” can only properly refer to “ the party who escapes ” as an antecedent. So that “ you have” is equivalent to “ one has ”—not an unfrequent form of expression.
The 73d section (ubi sup.) of the statute under consid *583 eration evidently provides “ a process,” by which prisoners of old Sheriffs can be taken into custody by their successors. Of course the expression in the charge, that the plaintiff could have taken the prisóner into custody, does not mean literally that he could arrest him personally, and no exception is made on that score. It is equivalent to saying he could have had him taken into custody by lawful means. It may not be impossible that a new Sheriff may require a new execution to take and retain a prisoner in custody, charged in execution in a civil action. It could certainly do no harm if the prisoner were detained in custody on the original execution, and it might be possible that some such step was necessary to be taken by the plaintiff in order to compel a new Sheriff to take the, custody of prisoners from a predecessor. There was no request to charge that it could not be issued, or that it was useless; and that not being done, if the Jury had even been instructed that they could take into consideration a power of reception thereon, it would not have been error, because it would tend to define the extent of the injury.
The power of issuing a new execution by a plaintiff in case of an escape is sustained by both statute and common law. (2 R. S., 685, § 20; 3 Id., 5th ed., 643, § 8; 1 R. L., [1813,] 426, § 24; Wesson v. Chamberlain, 3 Comst., 333.) And I think there can be no doubt that an execution against the person is a means of coercion, and neither a compensation nor a punishment, since the insolvency of the prisoner can be given in evidence in mitigation of damages. If a new execution had been available in this case, the Jury had a right to take that fact into consideration in determining how much the plaintiff lost, because he could not avail himself of any remissness on his own part. (Bridge v. Grand Junction, Sec., 3 Mees. & W., 248.) Since the reason of the rule for excluding the consideration of the power of issuing a new execution in case of an escape is not applicable to an action of this kind, which is, that the same ground would justify an escape from every sue *584 cessive execution, ad infinitum. (See Arden v. Goodacre, 11 C. B., 371; S. C., 15 Jur., 776; Ledyard v. Jones, 4 Sandf. S. C., 67; S. C., 3 Seld., 550.)
Any power in the new Sheriff to take into his custody prisoners not delivered or assigned, and his actual taking by virtue* thereof, undoubtedly arise from some continuing authority of the original execution. And yet, if he should be indisposed to take such custody, the plaintiff might quicken his action by a new execution, when he would be bound to decide whether he would proceed under the statute or the execution. If the plaintiff could do that, then certainly it would be no harm for the Jury to take into consideration both the power of the Sheriff under the 73d section, and the aid to that power afforded by a new execution. The only question upon that point would be, whether the plaintiff would suffer the same damages in both cases, whether he could not or could issue a new execution.
The only real questions in the cause on the merits were, whether the plaintiff suffered the same damages as in case of an escape; and if he did not, what such damages were, and what considerations of existing circumstances or rights tended to enlarge or diminish them. The power of issuing a new execution seems to me to be one of such circumstances even where there is no escape. But, as I have said before, there was no charge, that the plaintiff could arrest the defendant by a new execution, but only that he could take him by process, which could as well refer to setting the new Sheriff in motion under the 73d section, as by a writ directed to him. The real point was, whether the prisoner was so discharged from custody as to give the' plaintiff a right to recover the whole of his claim, or only a part, in consequence of such discharge. There was, therefore, no error in the refusal of the requests to charge, or any part of the charge excepted to.
Exceptions taken to the admission or rejection of evidence were equally untenable. The first exception was to the admission of evidence of the prisoner having used *585 considerable money since 1856. Evidence of his having spent considerable money was allowed. It did not appear what was intended by “ usedif it meant the same as spent, the question was answered; if it did not it was too vague and remote to show the possession of any property in 1859, the time of the defendant’s supposed omission. There must be a limit to all such inquiries, and three years is too far back to commence a fishing inquiry.
An objection taken to the inquiry for the defendant’s reason for not assigning the prisoner in question was properly overruled. He had already answered in the negative, the plaintiff’s inquiry, whether he had assigned the limit bond in this case, and that his reason for not delivering up such prisoner was that the new Sheriff had refused others. If his answer to the» question excepted to had been that his reason was a matter which formed a legal excuse, it might have turned out to be a defense or a mitigation of damages; particularly if the defendant was only answerable for delay in assigning, and not" for anything which would defeat the claim. As it was the answer only became immaterial.
There was, therefore, no error in either the charge, refusal to charge, admission or rejection of evidence. The charge was, perhaps, more favorable to the plaintiff than he might have been entitled to ; but he cannot complain of that.
The judgment and verdict must therefore be affirmed, with costs.