UTICA.<br>
Aug. 1824.<br>
Jackson<br>
v.<br>
Collins.

---

## JACKSON, *ex dem.* SCOFIELD, *against* COLLINS.

EJECTMENT, tried at the *Monroe* Circuit, before (the late) Mr. Justice PLATT, on the 4*th* day of *July*, 1822, for lots number 61, 62, and the north half of 63, situate in the village of *Rochester*.

The demise in the declaration was laid on the 14*th* day of *March*, 1822. On the trial, the lessors of the plaintiff showed the following title : 1. A deed duly acknowledged and proved, dated the 2*d* day *January*, 1818, from *N. Rochester*, *C. Carroll*, and *William Fitzburgh*, to *William Robb*, for lots number 61, 62 and 63, in the village of *Rochester*. The deed was executed by *N. Rochester*, for himself, and for *Carrol* and *Fitzburgh*, by *N. Rochester*, their attorney. 2. An exemplification of a judgment in the Supreme Court, in favour of *Jonathan R. Hale*, against *Robb*, for $483,62,

In ejectment, an objection cannot be made at the bar that the plaintiff failed at the trial to make out a title, unless such objection was previously made at the trial.<br>
One claiming under a deed from a judgment debtor has not such an adverse possession as will avoid a conveyance executed by a purchas-

er under an execution upon the judgment.

A deputy sheriff may complete an execution by sale and conveyance, after the sheriff goes out of office, provided the execution was levied before.

A deputy sheriff who is plaintiff in, or assignee of a judgment, may purchase under an execution thereon directed to his principal.

In construing a statute, wherever the intention of the legislature can be discovered, it should be followed with reason and discretion, though such construction seem contrary to the letter of the statute.

Cases illustrating this proposition referred to by the plaintiff's counsel.

filed *August 30th*, 1819, and an *alias testatum fi. fa.* on this judgment, directed to the Sheriff of the county of *Genessee,* tested *August*, and returnable *October* term, 1820.   It was then proved on the part of the plaintiff, that the above lots 61, 62, and the north half of 63, were sold by virtue of the execution, by *Oliver Lee*, a Deputy Sheriff, on the 4*th* day of *October*, 1820, to *Ralph Wadhams*, for $535,50, being the full amount of the execution and Sheriff's costs, and it was further proved, that at the time of the sale. *Lee* gave to *Wad-hams* a certificate that, at the expiration of 15 months, he would be entitled to a deed.   The plaintiff then produced a deed duly proved, dated the 9*th* day of *Februray*, 1822, of the above premises, from *Parmenio Adams*, late Sheriff of the county of *Genessee*, by *Oliver Lee*, deputy, to *Ralph Wadhams*, the purchaser, for the consideration of $535,50 ; and a quit-claim deed, duly proved, from *Wadhams* to *Sco-field*, the lessor, dated the 18*th* day of *February*, 1822. for the consideration of 600 dollars.   It was also proved by the plaintiff, that the defendant, at the time of the demise in the declaration, and at the time of trial, was in possession of the premises, and that he confessed that he rented the premises of one *Harvey Montgomery ;* and that *Montgomery*, four or five years since, said that he had the premises in question, of *Robb*, from whom the lessor of the plaintiff claimed title.

It  appeared that the defendant was in possession of the premises under *Montgomery*, at the date of the deed from *Wadhams*, to the lessor of the plaintiff ; that *Lee*, at the time he sold the premises, was a Deputy Sheriff; that *Adams*, the Sheriff, went out of office in the winter of 1821, about a year previous to the date of the deed given by *Lee*, in the name of the Sheriff to *Wadhams*.

*Lee*, the Deputy Sheriff, was then called as a witness by the defendant.   He stated that *Scofield*, the lessor, handed him the execution in favour of *Hale*, against *Robb*, and directed him to sell the premises in question, stating, at the same time, that he had bought the judgment of *Hale ;* that at the time he sold the premises, he informed the by-stand-

ers the amount of the execution, and the sum he wished to raise, and that there were several bids from different persons : that *Wadhams*, to whom it was sold, overbid the rest. The witness further stated, that the purchase money was not paid by *Wadhams*, at the time of the sale ; that, in a conversation between the lessor of the plaintiff and *Wadhams*, after the sale, *Scofield*, the lessor, offered to take *Wadham's* note ; witness saw *Scofield* and *Wadhams* sit down at a table to write, but did not see *Wadhams* deliver the note to *Scofield* ; that at the time they were writing the note, the witness left the room. Soon after, *Scofield*, the lessor, as assignee of *Hale*, receipted the execution in full. It appeared that *Scofield*, at the time the premises were sold, was a Deputy Sheriff of the county of *Genessee*.

From the above facts, it was contended by the defendant, 1. That *Wadhams* was the trustee of *Scofield*, and purchased the land for his benefit. 2. That the purchase was void, *Scofield* being a deputy at the time. 3. That the deed given by *Lee*, the deputy, after *Adams*, the Sheriff, went out of office, was void ; and 4. That if *Wadhams* was not the trustee of *Scofield*, there was an adverse possession on the 18*th* day of *February*, 1822, at the date of *Wadhams'* deed to *Scofield*, the lessor.

A verdict was taken for the plaintiff, subject to the opinion of the Court on the above case.

*H. D. Mason* & *J. C. Spencer*, for the plaintiff. The 16th section of the act concerning judgments and executions,(a) is general, and forbids a Sheriff to whom an execution is directed, and his deputies, from purchasing; but this must mean the officer acting in the sale, or to whom the process is delivered. If not so, then a deputy having a judgment, cannot adopt the only effectual means of getting his money, that of bidding under the execution ; for, in such a case, the execution cannot go to the coroner. It goes to him only when the *Sheriff* is interested.(b) " Such a construction ought to be put on a statute as may best answer the intention which the makers had in view ; and this intention is sometimes to be collected from the case or necessity of ma-

(a) 1 R. L. 506.

(b) *Done v. Smethier, Cro. Car.* 416.

king the statute, and sometimes from other circumstances; and whenever such intention can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seem contrary to the letter of the statute ; and a thing which is within the letter of a statute, is not within the statute, unless it be within the intention of the makers." These propositions are sustained and illustrated by various English cases of construction upon statutes where the Courts have departed from the letter in order to reach the spirit and intent of the act. (Reniger v. Foggassa, Plowd. 18. Straunge v. Croker, id. 88. 2 Inst. 64. The King v. Younger, 5 T. R. 449. Margate Pier Co. v. Hannani, 3 B. & A. 266. Edwards v. Deck, 4 id. 212, per Holroyd, J.

Here was not an adverse possession in the defendant at the time of Wadham's conveyance to Scofield. If the former was the trustee of the latter, as insisted by one of the defendant's points, and which we concede, of course, adverse possession is out of the question. But, proceeding upon the ground that Wadhams purchased for his own benefit, we deny that there was such an adverse possession as prevented his conveying to Scofield. The defendant, Collins, held under Montgomery, who purchased of Robb, the defendant in the judgment and execution. Both Montgomery and Collins were quasi the tenants of the purchaser.(c)

Lee had a right to convey, though his principal had gone out of office. The sale was complete on the 14th October, 1820. The Sheriff had obeyed the execution ; and all that remained was to give the evidence of the sale, if the property should not be redeemed. In Jackson v. Bush,(d) the Court say, " A sale, and the consummation of that sale by a deed, are acts which the Sheriff may do by deputy. The law does not require them to be done by the Sheriff in person." Here no distinction is made between the deputy of a Sheriff out of office, or one in. The case, indeed, did not call for it ; but as far as it goes, it shows that the deputy may do whatever the Sheriff can. Lee was proved to be a general deputy.(e) Execution being an entire thing, he

(c) Jackson v. Sternburgh, 1 John. Cas. 155. Same v. Graham, 3 Caines' Rep. 188. Same v. Bush, 10 John. 223.

(d) 10 John. 223.

(e) Jackson v. Davis, 18 John. 10.

who begins must end it, and therefore, if a Sheriff seize goods, and is removed, yet he is to proceed in the sale. (f) The authority of the principal, therefore, continued; (g) and an authority from him to the deputy being indefinite in time is not revoked unless it be countermanded, or cease by the death of the principal or agent. (h) The appointment of a deputy is so long as the principal shall be Sheriff, or have any thing to do as Sheriff; and if he may execute process after he is out of office, he does this as Sheriff. So far has this doctrine been carried, that on the renewal of a Sheriff's commission under the old constitution, no new appointment of an Under Sheriff was necessary; neither need his bond be renewed; but he continued Under Sheriff, and his bond continued in full force. (i) *Dalton*, in his treatise on the office of Sheriff, (j) calls the Under Sheriff (who answers to our deputy) the *attorney* of the Sheriff; and that he may be appointed at will, and revoked as an attorney may be. Why may not a removed Sheriff appoint an attorney to do that which the principal is authorized to perform? And what is the difference whether the appointment be before or after his removal?

No objection to *Robb's* title was taken at the trial. It is too late to raise it now. But it is unfounded in point of fact. *Rochester's* authority to execute the deed, was not questioned at the trial. Besides, *Montgomery* claimed under *Robb.* (k)

*W. C. Van Ness & J. A. Collier*, for the defendant. No title is shewn in the lessor of the plaintiff. Even a *prima facie* case was not made; and this is not one of that class of objections from which we are precluded by having omitted to make it at the trial. The objection goes to the merits; there is a defect in the title; and the defendant shall not be precluded from urging it merely because other objections were made at the trial. (l)

The Deputy Sheriff had no power to execute a deed after the Sheriff, his principal, was removed from office. We can find no adjudged case upon this subject, but contend that af-

UTICA, Aug. 1824.

Jackson v. Collins.

(f) *Dalt. Shiff.* 19. *Salk.* 323. *Cro. Jac.* 73. *Devoe* v. *Elliott*, 2 *Caines' Rep.* 243.

(g) *Bac. Ab. Sheriff* (J) *Hempstead* v. *Weed*, 20 *John.* 64.

(h) *Co. Litt.* 52, b. *Bac Ab. authority*, (E) (i) *Hughes* v. *Smith.* 6 *John. Rep.* 168.

(j) 456.

(k) *Jackson* v. *Scott*, 18 *John.* 94.

(l) *Palmer* v. *Lorillard*, 16 *John.* 348, *per Woodworth*, *J. in* 18 *John.* 564, 5.

ter the Sheriff is removed from office, the power of his dep-
uty is, *ipso facto*, at an end ; and that, at all events, no one
can thereafter act without *new* and *special* authority from the
Sheriff.   He and his sureties would not be bound for the
misconduct of his deputy after the expiration of his term of
office.   Suppose the deputy should sell the goods of a stran-
ger, after the Sheriff's term of office had expired ; would he
be liable for this act of his *late* deputy ?   Previous to the
redemption act, (as it is called) suppose the *late* deputy of a
*late* Sheriff should have given a *deed*, without any previous
levy or sale—nothing more need be shewn than the judgment,
execution and Sheriff's deed, to entitle the plaintiff to re-
cover.   Would such a deed from the *late* deputy be sufficient,
then, to authorize a judgment against the defendant in pos-
session ?   There is *no responsibility* resting upon the *late* dep-
uty.   He acts under no oath of office.   His *own sureties*
would not be bound beyond the period of the Sheriff's term,
and neither the Sheriff nor his *sureties* for any act after this
period.   The authority of an agent or attorney ceases upon
the death of his principal.   Does not the power and author-
ity of a deputy also cease, upon the *political death* of the
Sheriff ?

The defendant, (or *Montgomery*) was in possession, claim-
ing adversely, at the date of the deed to the lessor of the
plaintiff.   The defendant had *rented* the premises of *Mont-
gomery*, and neither of them acknowledged any subsisting in-
terest in *Robb*.   The defendant claimed to hold under his
lease, and *Montgomery*, who said he *had* the premises of
*Robb*, claimed and exercised the right of leasing the premi-
ses to the defendant, without the privity or consent of *Robb*
or any other person ; and the defendant was in possession
under the lease.

*Curia*, per SAVAGE, Ch. J.   It is objected, 1, that no title
was shown in *Robb* subsequent to the judgment.   Title was
in *Robb* the 2d *January*, 1818, and judgment *August 30th*,
1819.   The presumption is, therefore, in the absence of all
proof to the contrary, that it continued in him during the
intermediate time.   Besides, had the objection been ta-
ken at the trial, that fact might have been shown.

2. It is objected that *Lee*, as deputy to *Adams*, had no right to execute a deed after *Adams* was out of office, *Lee* being no longer deputy. It is not denied that during *Adams'* continuance in office, the deputy had authority to do any act which his principal could do in his official capacity, except the appointment of deputies, (and *vid. Parker* v. *Kett*, 1 *Ld. Raym.* 659, and S. C. 1 *Salk.* 95.) But it is contended that the authority of the deputy ceased when the new Sheriff had taken the office upon him. In my opinion, the authority of the deputy is limited by the duration of the authority of his principal. An execution against the property of a defendant, partly executed by the old Sheriff, shall be completed by him, and in relation to any such execution in the Sheriff's hands, when he goes out of office, he continues Sheriff, and may act by deputy, as if he was still in office. He is in office *quoad hoc*, and the acts of a deputy in relation to such an execution are the acts of the Sheriff himself. Even in the case of a *ca. sa.* upon which the defendant has been arrested, and is imprisoned, it is optional with the old Sheriff whether he will transfer the prisoner to the new Sheriff. The old Sheriff has a right to retain the custody of the prisoner, and complete the execution of the writ. (*Hempstead* v. *Weed*, 20 *John.* 64.)

3. There was no adverse possession shewn, to defeat the operation of the deed, either from the Sheriff to *Wadhams*, or from *Wadhams* to the lessor of the plaintiff.

4. It is made a point, that *Wadhams* was a mere trustee for *Scofield*, and that he, being a deputy of the Sheriff at the time of the sale, was prohibited by statute from purchasing. The statute is, " that it shall not be lawful for any Sheriff, or other officer, to whom any such execution shall be directed, or any of their deputies, or any person for them or either of them, to purchase any goods or chattels, lands or tenements, at any sale, by virtue of any execution, and all purchases so made by them, or any of them, or for the use of them, or any of them, shall be void." Admitting, as the plaintiff does, that *Wadhams* purchased for the use of *Scofield*, the purchase comes within the letter of the act, but it could never have been the intention of the legislature to have prevented a Deputy Sheriff, when plaintiff in an execution, from bidding, in

UTICA.
Aug. 1824.

order to secure his money. The object was to prevent abuse—that the Sheriff or his deputies should not be allowed to become purchasers at their own sales, and thereby be induced to conduct corruptly in relation to them. But surely it was never intended to place those persons in a worse situation than others, as to the collection of their own demands. "Whenever the intention of the makers of a statute can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seem contrary to the letter of the statute." (*Bac. Ab. tit. Statute*, (I) 15 *John*. 380, *per Ch. J. Thompson.*) A thing which is within the letter of a statute is not within the statute, unless it be within the intention of the makers. This proposition is fully established and illustrated by the cases cited on the part of the plaintiff.

I am, therefore, of opinion, that *Scofield* had a right to bid and purchase, *bona fide*, as we are to presume he did in this case; for fraud, of any kind, is not imputed. The plaintiff is accordingly entitled to judgment.

Judgment for the plaintiff.