GOODALE (BARCLAY v.). See Case No. 972.

GOODALL (DUANE v.). See Case No. 4,-105.

## Case No. 5,533.
### GOODALL v. TUTTLE.
[3 Biss. 219; 5 Am. Law T. Rep. U. S. Cts. 240; 7 N. B. R. 193; 7 West. Jur. 32; 4 Chi. Leg. News, 473, 485.] 2

District Court, W. D. Wisconsin. June, 1872.

BANKRUPTCY — RIGHT OF ASSIGNEE TO SUE IN ANY DISTRICT COURT.

1. A suit may be maintained by an assignee in bankruptcy to collect the assets of the bankrupt in any other district court than that where the proceedings in bankruptcy are pending.
[Cited in Bachman v. Packard, Case No. 709; Re Brinkman, Id. 1,884; Lamb v. Damron, Id. 8,014.]
[Cited in Brown v. Wygant, 6 D. C. (Mackey) 448.]

2. The right of the assignee to sue in the other district courts is not expressly conferred, but it may be held to be included in and implied from the grant "to collect the assets," as that power could not be otherwise made effectual.

3. Jurisdiction over debtors of the bankrupt not being obtained by the bankruptcy proceedings, such power must, in order to give full effect thereto, necessarily be held to extend to

---

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 7 West. Jur. 32, contains only a partial report.]

---

any district where a suit to collect the assets is necessary.

4. It must be held that congress intended to provide for the complete administration of the bankruptcy system in the federal courts, and as authority to entertain such suits is not given to the circuit courts. it must exist in the district courts, or the jurisdiction be radically defective.
[Cited in Sherman v. Bingham, Case No. 12,-762; Bachman v. Packard, Id. 709; Johnson v. Price, Id. 7,407.]

5. The second section relates exclusively to the jurisdiction of the circuit courts under the act, and its provisions cannot, therefore, properly be referred to, to limit the jurisdiction of the district courts conferred by the first section.
[Cited in Smith v. Crawford, Case No. 13,-030; Bachman v. Packard, Id. 709.]

6. The rule that a legislature, by adopting a statute of another state, or re-enacting an old statute, is presumed to have adopted the judicial construction given thereto, considered and authorities referred to. Cases under the bankrupt act of 1841 [5 Stat. 440] cited and approved.

7. Congress not possessing the power to require or compel the state tribunals to entertain suits in favor of an assignee for the collection of the assets of the bankrupt, the courts should not construe the bankrupt act in such a manner as to necessitate in its execution assistance beyond the constitutional power of congress to provide.

8. Numerous recent cases cited and examined.

In bankruptcy. This was a suit by Ira E. Goodall, assignee of the Rock River Insurance Company, bankrupt, appointed by the district court of the Eastern district of Wisconsin, where the bankruptcy proceedings were pending against L. S. Tuttle, a resident of this district, to collect a debt claimed in favor of the bankrupt's estate, being a premium note given by the defendant for insurance issued to him. The defendant filed a plea to the jurisdiction of the court. This was one of a large number of similar suits, and was made a test case.

S. J. Todd and Finches, Lynde & Miller, for assignee.

S. U. Pinney and M. M. Cothren, for defendant.

HOPKINS, District Judge. The defendant claims that an assignee in bankruptcy cannot sue to collect the assets of the bankrupt, in any other district court than where the bankruptcy proceedings are pending. It presents a question upon which there exists some diversity of opinion among the district judges. I have therefore held it some time for examination. As far as I have seen, all the cases reported under the bankrupt act of 1841, sustain the jurisdiction, while nearly all made or published under the present act, are against its existence; but what is very strange, reference is in only one of the decisions under the present act, made to the cases decided under the act of 1841, directly upon the question.

It may be regarded, therefore, as a kind

of choice between old and new cases, but I do not propose to rest upon either without an examination of the reasons and principles upon which they are respectively based, and a careful examination of the provisions of the statute upon the subject of jurisdiction of the federal courts in bankruptcy proceedings, and in proceedings growing out of and in virtue of the bankruptcy proceedings. The district courts have no jurisdiction as between party and party of suits at law or in equity for the collection of the assets of the bankrupt, except what is conferred· by the bankrupt act, so if such jurisdiction is not conferred by that act, this court is unquestionably without jurisdiction in this and kindred cases.

The question of residence of. the parties, which is material in civil cases under the general grant of jurisdiction to the federal courts, is not important here, for this court does not derive any power to act in this case under such authority or statutes. Congress is authorized by the constitution "to establish uniform laws on the subject of bankruptcy throughout the United States." Article 1, § 8, subd. 5.

Whatever authority the district courts have in the premises is derived from the acts of congress passed under that clause of the constitution. The power under that clause is sufficiently comprehensive to enable congress to adopt a uniform system of bankruptcy, commit its administration to such of the courts of the United States as it might choose, and to provide the modes of procedure, special or otherwise, as they might, in their discretion, deem best adapted to secure and accomplish the objects of the act; and if such proceedings should differ from those in ordinary cases and suits, they would, notwithstanding, be obligatory upon the courts, as congress has, by the constitution, plenary authority over that subject.

By the bankrupt act of 1867 [14 Stat. 517], the jurisdiction and all the original jurisdiction created thereby, was conferred upon the several district courts of the United States, which, I think, and as is generally conceded, confers upon the district court where the proceedings are pending, the power to entertain suits of this kind. So that the question is not whether the act authorizes the assignee to sue in the ordinary mode as between party and party in any district court, but whether such right is confined to the district court where the bankruptcy proceedings are pending. Hence it becomes necessary to inquire by what provision the dis-. trict court of the same district gets such jurisdiction, and, if it is found to exist, then to see by what clause it is restricted to that district.

I do not understand it to be claimed that the act expressly grants such jurisdiction, but only that it results from the authority given to the courts to adjudicate ·upon, collect the assets of, and to administer and dis-

tribute the estate of the bankrupt. The grant of jurisdiction to collect the assets, it is assumed, impliedly .confers upon the courts, in the absence of any provision prescribing the manner of carrying into effect such jurisdiction, the right to adopt such form of proceeding as may be necessary and appropriate to give practical efficiency to such grant. This is a universal rule of construction, and without such a rule many rights would go unredressed, for it is not unusual for legislative bodies to leave with the courts the power to devise and adopt a remedy commensurate with the exigencies of the case in the execution of the authority conferred, the restrictions being that they must not be ·such as are in violation of the provisions of the fundamental law, or in derogation of the constitutional rights of the citizen.

As I have before said, the right to proceed in the district court by the ordinary and plenary modes of actions at law or in equity, as between party and party, is not expressly conferred in the act, but as stated by Chase, C. J., in Re Alexander [Case No. 160], "This jurisdiction may be well enough held to be included in the general grant of the first section." It is important to bear this in mind, as it may assist in a settlement of the difficulties that have been encountered on this question of jurisdiction of the district courts.

The second section does not profess or attempt to confer or regulate the jurisdiction of the district courts. That relates exclusively to the circuit court. But it may with propriety be said to assume the existence of this jurisdiction in the district courts. That section clothes the circuit court with concurrent jurisdiction with the district court in certain (not all) cases arising under the act, but not of the character of this case, so it is not necessary to define or discuss its extent or meaning. I say by that section, congress assumed the jurisdiction of the district court in all cases, and that it was conferred by section 1, for if it is not found in that it does not exist. And in that assumption there is a very clear legislative construction of the extent and meaning of section 1.

To be more specific than Chief Justice Chase, I think it may well be held to be included in the express and general power "to the collection of all the assets of the bankrupt." And as no special mode is provided for . carrying out or exercising that power, it is to be presumed, as before stated, that congress intended the courts would, according to their usual practice in such cases, adopt the customary and common mode of practice ·provided for the collection of debts or the recovery of property in other cases— that is to bring an action either at law or in equity, according to the nature of the case.

But, as before stated. the right to maintain suits of this kind in the district where the proceedings are pending, is not questioned—

only the right to sue in any other district. In the solution of that question, it may be profitable to examine and see, if possible, why the right was given the assignee to sue for the collection of the debts only in such district. The debts and assets of every nature, situated in all districts, pass to and vest in the assignee, as much as those situated in the district of his appointment. It is his duty to collect the debts from parties out of his district, and to take possession of property out of his district and convert it into money, as much as that within it. Why restrict his right to sue in the district court to the district where he was appointed? If the interests of the estate might be promoted by allowing the assignee to sue in the district court appointing him, is that consideration any less potent as applied to his right to sue in other district courts? Do not the same reasons that exist for authorizing him to sue in one district court exist and apply equally to the right to sue in any and all districts? I suggest these questions to see if any reason can be assigned for the distinction attempted to be sustained.

It is said by one learned judge that the assignee is not remediless; that he can sue in the state courts. Suppose that to be so, can he not sue also in the state courts within the district of his appointment? That being so, it furnishes no reason for any such distinction.

I assume, therefore, that no satisfactory or plausible reason can be assigned for allowing the assignee to sue for the collection of the assets in the district court appointing him, that does not apply, with equal force, in favor of his right to sue in any other district; and if no reason for such distinction can be assigned, why impute to congress an intention to create one? But it is said that the first section so limits it. I think I have shown that it does not; that in terms it does not give the right to maintain a suit in any district court, but that such right only exists by implication, as being fairly within the intention of congress, and as necessarily attaching to the district courts to collect the assets. Is it to be inferred as extending to that district as a necessity to the due administration of the laws? That cannot be upheld, for I have shown that if the assignee can sue in the state courts to collect the assets in one district he can in another, and thus through the agency of those courts collect all the assets—those authorized by the second section of the act to be sued for in the circuit court, as well as the common debts that cannot be sued for in the circuit court. So I say again there is no necessity for holding that the assignee may sue for assets in the district court appointing him, and not in any other.

There is nothing in the act that requires it, and as there is no reason for making such distinction, I do not think courts should establish such an one. The act provides "that the jurisdiction hereby conferred shall extend to the collection of all the assets." If any portion of the assets were out of the district, how were they to be collected? In one of two ways; either by process issuing from that district court, to the defendants residing in any district, or by allowing suit to be brought in the district court where the defendant might reside. To collect all the assets, one of those modes would have to be adopted. It is very plain, I think, that the general rule which prohibits the suing a party out of the district where he resides, was not changed. So it must have been supposed by congress that suits could, under that general power, be brought in any district court. But it is said that the first section confers jurisdiction "on the district courts in their respective districts," that that is the extent also of the "original jurisdiction" conferred. I think too much importance is given that expression. There are certain proceedings that the bankrupt courts can only do in the district where the proceedings are pending—such as the adjudication of bankruptcy; that could only be done by the court where the proceedings were pending if those words were omitted; so also of all that class of cases and proceedings relating to the regularity of the bankrupt proceedings proper, including controversies between the bankrupt and his creditors, the ascertainment of liens on bankrupts' property, and the priority thereof, down to the distribution of the assets and the discharge of the bankrupt. These and like questions must all necessarily be heard by the court before which the bankruptcy proceedings are pending. None of those matters could be tried or heard in the state courts or any other court, so that limitation in the act as to such matters does not appear to possess much significance, as the same construction would have to be given to the act if it had been left out.

But the act provides for things and acts to be done that affect and relate to third persons; acts which do not in any sense require the presence of the records of the case or proceedings; acts and proceedings which it is contended can be transacted and taken in the state courts, to-wit: suits for the collection of the assets against delinquent debtors. Should the limitation be held as applicable to such cases? As before stated, the right to collect all the assets is one of the express grants conferred by the act upon the district court, and if congress had intended to confine the right of the assignee to prosecute suits to the district court of the district appointing him, it seems to me they would have expressed such limitation in unequivocal language, and made some other provisions for the collection of debts from parties living outside of that district.

But the act contains this further general

authority, "to do all acts, matters and things to be done under and in virtue of the bankrupt proceedings," without any words of limitation or restriction as to courts. Did not congress intend by that, that all proceedings necessary to be done in virtue of the bankruptcy should be done in the federal courts? Suits against third parties to collect the debts and to collect the assets generally, are not such suits included in the general terms as proceedings in virtue of the bankruptcy. Can it be maintained from any thing in the act, that congress intended to leave the collection of the debts or any part of the assets to the agency of the state courts, or that they intended to rely upon the instrumentality of any other courts than those of federal origin for a complete administration of the laws? If not, then why construe it so as to necessitate the employment of such agencies? Why give a construction that defeats the manifest intention of congress in that respect? Courts are not authorized to create a limitation by construction; that is in contravention of the intention of the law makers. Dresser v. Brooks, 3 Barb. 429.

The system adopted and established by congress should be administered by the courts charged with that responsibility, according to its true spirit, intent and meaning, instead of their attempting to escape therefrom by a narrow and technical interpretation of the language, without regard to the obvious purport of the whole act. My conclusions, therefore, are, that congress, under the power contained in the constitution, by the act of 1867 established a uniform system of bankruptcy; and in it they attempted and intended to confide its administration to the federal courts, and for that purpose they conferred original jurisdiction upon the several district courts of the United States within their respective districts, to adjudicate upon the question of the bankruptcy, to hear all matters relating to the bankruptcy, and all questions arising between the bankrupt and his creditors, authorizing this jurisdiction to be exercised in vacation as well as in term time, and authorized a review of all such proceedings in the circuit court of the district where the proceedings were pending, by petition or otherwise, and empowered the circuit court to hear those matters in vacation or term time; that the exercise of the jurisdiction thus far was meet and proper to be had in the district court where the papers were filed and not in any other district.

The act further confers the power upon the district courts to collect all the assets of the bankrupt, and to do all other acts necessary to be done in virtue of the bankruptcy. This by implication confers the authority upon the district courts to entertain jurisdiction of suits in the name of the assignee against third persons, either at law or in equity, for the collection of the debts and property of the bankrupt, and as such jurisdiction is not expressly limited to the district courts where the proceedings are pending, and as no reason exists for such limitation, the courts are not warranted in restricting its exercise to such district.

I have not undertaken to define with accuracy the character or extent of the jurisdiction of the circuit courts under the second section, as I do not see that that section sheds any light upon the jurisdiction of the district courts as conferred by section one.

The eighth section, by allowing appeals from decrees and writs of error from judgments of the district courts to the circuit courts, assumes that the district courts have jurisdiction of suits at law and in equity, and there is nothing in that section that indicates, or from which it may be inferred, that it is restricted to any particular district or class of cases. It may be applicable to and include all cases without exception, and the language is as consistent with its existence in each district as in the district where the proceedings are pending.

The judges holding that an assignee cannot sue in any district court other than where he was appointed, also hold, (and correctly, too, I think,) that a party cannot be sued outside of the district where he resides or is found, or in other words that jurisdiction in that respect is not enlarged; so that by their own construction they convict congress of the folly of establishing a system of bankruptcy without providing the means for its execution within their own jurisdiction. Such a construction is as destructive of the uniformity of the system they are empowered to establish as it is subversive of their intentions.

The jurisdiction that may be exercised in vacation is entirely different from that for the collection of debts or assets. By the proceedings and adjudication, jurisdiction is obtained of the bankrupt and his creditors, and the court making the adjudication is the only one, according to the well settled rules of all courts, that can deal with the bankrupt and his creditors, and settle all conflicting claims, equities and controversies arising between them. All such matters are exclusively within the jurisdiction of the court where the proceedings are pending, and such parties may proceed summarily to have their rights heard and determined by such court.

It has been held that persons or creditors holding claims upon the property of the bankrupt, in the possession of the assignee, may proceed summarily by petition as against the assignee,—Ferguson v. Peckham [Case No. 4,741],—while the assignee, to collect the debts or to recover property claimed adversely, must proceed by action at law or in equity. The reason for such distinc-

tion is obvious. As I have already attempted to show, jurisdiction over the debtors and adverse claimants is not obtained by the bankruptcy proceedings, they cannot be treated as parties to the proceeding like creditors. That being so, the power to collect the assets was necessarily additional— an independent authority given to the district courts, not to be exercised at chambers, like their other powers, but in the usual and formal manner that courts proceed in common law and equity cases. This is the jurisdiction that I have endeavored to show may be held as impliedly conferred by the first section, and which is recognized by the second and eighth sections, and which, according to my understanding of the act, pertains to each district court, and authorizes an assignee in bankruptcy to sue for the collection of the assets in any district court where it may be necessary to effect such collections. This conclusion is at variance with the decisions of some of the district courts, but I think I am sustained in it by the weight of authority as well as by sound reason.

I cannot but be impressed with the idea that due consideration has not been given to the authority of decisions made under the act of 1841, sections 6 and 8 of which correspond in substance with sections 1 and 2 of the present act, except that some additional powers are expressly conferred by the present. They are the sections which confer jurisdiction, and it becomes, therefore, of the first importance to ascertain what construction had been given and placed upon those sections concerning the question of jurisdiction, before the passage of the present act, for as congress subsequently re-enacted the law, it is to be presumed that they did so in view of the construction given to it and in affirmation thereof.

This rule is universally applied in the construction of re-enacted statutes. Sedg. St. & Const. Law, 428–431. If, therefore, the courts had interpreted the corresponding sections in the act of 1841, as giving the authority for the assignee to sue in other district courts than where the proceedings were pending, under the rule above stated, such interpretation is absolutely binding upon the courts. Such decisions have not only the weight that the eminent legal attainments and ability of the judges pronouncing them gave to them, but in addition thereto is the presumption that congress approved and sanctioned them, which, it seems to me, the courts should regard as of about the same effect as if such construction had been incorporated into the act.

The bankrupt act of 1841 expressly allowed certain jurisdiction to be exercised summarily, which, under the present act, the supreme court, in Smith v. Mason, 14 Wall. [81 U. S.] 419,[2] has decided is not the case. It

2 Consult, also, Marshall v. Knox [16 Wall. (83 U. S.) 551].

is there settled that when the party sued is a stranger to the proceedings, he must be proceeded against in the formal mode as used in common law or equity cases. In Ex parte Christy, 3 How. [44 U. S.] p. 312, Judge Story, from whose opinion a part of the special grants of jurisdiction in the present act are copied, says: "The obvious design of the bankrupt act of 1841, c. 9, was to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period. For this purpose it was indispensable that an entire system adequate to that end should be provided by congress, capable of being worked out through the instrumentality of its own courts independently of all aid and assistance from any other tribunals over which it could exercise no effectual control."

Again, at page 320 he says: "The judicial power of the United States is, by the constitution, competent to all such purposes; and congress by the act intended to secure the complete administration of the whole system in its own courts, as it constitutionally might do." And further, at page 321, he says: "The truth is (as has been already asserted) that in no other way could the bankrupt system be put into operation without interminable doubts, controversies, embarrassments and difficulties, or in such a manner as to achieve the true end and design thereof."

From these general views of the reasons and principles involved in and underlying the act and the objects to be attained by it, and the modes and tribunals for its administration, no intelligent party, I think I may safely assert, will dissent, but it is true that the precise point involved in this case was not before the court, but there were others relating to the general powers of the district courts under the act which called for an examination and ascertainment of the jurisdiction conferred by the act, and made the remarks above quoted pertinent to that case and to the question now before this court.

The same learned judge, in Mitchell v. Great Works Milling Co. [Case No. 9,662], the case of a bill in equity filed in the circuit court by an assignee in bankruptcy, which was demurred to on the ground that the circuit court had no jurisdiction under the act of 1841, again examines and explains the law, and its various provisions relative to the jurisdiction conferred on the federal courts. He overruled the demurrer and sustained the jurisdiction. He there showed, by a very able and exhaustive argument, that congress contemplated by the provisions conferring jurisdiction, to give the entire administration of the law to the federal courts, and did not contemplate the aid of the state courts, and said: "It is clear that congress has no rights to require that the state courts shall entertain suits for such objects and purposes. The states, in providing their own judicial tribunals, have a right to limit, control and restrict their ju-

dicial functions and jurisdiction according to their own mere pleasure. They may refuse to allow suits to be brought there 'arising under the laws of the United States,' for many just reasons: First, because congress is bound to provide such tribunals for themselves; second, state courts are not subject to the legislation of congress, as to their jurisdiction," continuing the argument to show that the law, if it depended upon state tribunals for its execution, could not be administered. A bankrupt law, to be constitutional, must be uniform throughout the whole United States. That includes uniformity in administration, which it would be impossible to attain if it were entrusted to the state courts. Some might hold one provision unconstitutional, and some another, in a way to render the administration of it impossible. In no way, therefore, except by committing the administration of it to the federal courts, could it be made "uniform."

Justice McLean, in McLean v. La Fayette Bank [Case No. 8,885], says: "This power (bankruptcy jurisdiction) cannot be exercised by the state courts. Their powers are derived from different sovereignties, to which they are amenable. Congress had not the power to impose this jurisdiction on the state courts." Judge Story, in Ex parte Martin [Id. 9,149], had the question before him as to whether the federal courts in districts other than where the proceedings were pending had jurisdiction to restrain the proceedings by creditors, or to prevent parties from interfering with the bankrupt's property in such districts. After quoting the following language of the act as to the extent of the jurisdiction "to all acts, matters and things to be done under and in virtue of the bankruptcy until the final distribution and settlement," which is the same language used in the present act, he says:

"Now, this language is exceedingly broad and general, and it is not, in terms or by fair implication, necessarily confined to cases of bankruptcy originally instituted and pending in the particular district court where the relief is sought. On the contrary, it is not unnatural to presume that as cases originally instituted and pending in one district may apply to and reach persons and property situate in other districts, and require auxiliary proceedings there to perfect and accomplish the objects of the act, the intention of congress was that the district courts in every district should be mutually auxiliary to each other for such purposes and proceedings. The language of the act is sufficiently comprehensive to cover such cases." He further says: "No state court could entertain the suit, for the act confers no power or jurisdiction on any state court."

In Moore v. Jones, in district court of Vermont, reported in 23 Vt. 739, which was a proceeding by an assignee to collect a sum of money received by a party contrary to the provisions of the bankrupt act, Judge Prentiss says: "Jones was decreed a bankrupt, not in this court, but in the district court of the Northern district of New York, and the question is, whether, that being the case, this court can take jurisdiction of the matter in controversy, or, indeed, of any matter arising under or growing out of the bankruptcy." It will be seen that that case presents the identical question involved in this, and Judge Prentiss, on the authority of Ex parte Martin, supra, sustained the jurisdiction. The only question presented in that case was as to the jurisdiction of the district court of Vermont, and the decision sustaining it in that case is a direct authority in favor of the jurisdiction of this court in this case.

These are all the cases I have been able to find upon this question, reported under the act of 1841, and I have taken the liberty to quote freely from them, to elucidate and establish my own views by the reasons and opinions of those enlightened courts, and for the further purpose of showing the direct bearing and application of the well settled rule before referred to, that a legislature, by reënacting a statute which has received a construction from the courts, is presumed to have adopted the construction as well as the act itself—as stated in Pennock v. Dialogue, 2 Pet. [27 U. S.] 1: "The known and settled construction of these statutes by courts of law has been considered as silently incorporated into the acts, (on their reënactment,) or has been received with all the weight of authority." The same rule has been applied to constitutional provisions copied from other states. Their judicial construction is held to have been also adopted. Attorney General v. Brunst, 3 Wis. 791.

Now the courts having construed the act of 1841, which contained similar, though not as extensive, grants of jurisdiction as the present act, as not restricting the proceedings for the collection of the assets of the bankrupt to the district court where the proceedings were pending, and having so uniformly and emphatically held that the intention of congress was that the act should be administered in the federal courts, and that they could not constitutionally impose the execution of the act upon the state courts, and congress having, with full knowledge of such uniform interpretation, re-enacted the law, how can the courts escape from the application and obligation of the above rule? Is not that construction to be regarded as "incorporated into the act," and as binding upon the courts as the act itself? It seems to me it must be so, and that there is no way of escape from it. But without regarding that as absolutely controlling, I think the general and universal rules for the construction of statutes sustain such interpretation.

In U. S. v. Freeman, 3 How. [44 U. S.] 565, the court, after citing various cases as different illustrations of the rule, say: "The mean-

ing of the legislature may be extended beyond the precise words used in the law, from the reason or motive upon which the legislature proceeded, from the end in view, or the purpose which was designed, the limitation of the rule being, that to extend the meaning to any case not included in the words, the case must be shown to come within the same reason upon which the law-maker proceeded." Does not the "same reason" exist for allowing an assignee to sue for the recovery of the bankrupt's estate in the district court of every district where the estate is situated, as exists for allowing him to sue in the district where the proceedings are pending? If so, is it not manifestly the duty of the courts under that rule to place such a construction upon the act as to effectually carry out the intention of the law-makers? In People v. Utica Ins. Co., 15 Johns. 381, the court say: "Such construction ought to be put upon a statute as may best answer the intention which the makers had in view, and this intention is sometimes to be collected from the cause or necessity of making the statute, and sometimes from other circumstances; and whenever such intention can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seem contrary to the letter of the statute; where any words are obscure or doubtful, the intention of the legislature is to be resorted to, in order to find the meaning of the words. A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers, and such construction ought to be put upon it as does not suffer it to be eluded." 6 Bac. Abr. 1, 5, 10, and authorities there cited; 1 Kent, Comm. 462; Dresser v. Brooks, 3 Barb. 429; Jackson v. Collins, 3 Cow. 89; The King v. Younger, 5 Term R. 449; Margate Pier Co. v. Hannam, 3 Barn. & Ald. 266; Wilkinson v. Leland, 2 Pet. [27 U. S.] 627.

Again in Dwar. St. 690, it is said, "The intention is to govern, though such construction may not in all respects agree with the letter." "That the meaning of words is best ascertained from the subject of the act." Id. 696. "That the reason and object are a clue to the true meaning." Of course these rules are to be considered applicable only in cases where there is some ambiguity in the language, or the language is such as to leave some doubt as to the limitations of the act. When the words of an act are perfectly clear it needs no interpretation. But I think after the amount of discussion these jurisdictional clauses have occasioned, both under the old and the present act, that it will not be claimed or alleged that they are not sufficiently ambiguous to require interpretation.

I will now briefly examine the cases decided under the present act, and will endeavor to show that those which conflict with the interpretation sought to be maintained by me are in reality but two. The first case in which the question was raised or is noticed was In re Richardson [Case No. 11,774]. That was a bill brought by a bankrupt (residing in New Orleans) in the Southern district of New York, to enjoin his creditors from prosecuting their claims against him in New York, which was dismissed for want of jurisdiction. It may be very reasonably claimed that the district court of Louisiana had exclusive jurisdiction of the matter involved therein, and that the court in the Southern district of New York could not grant the relief asked. A state court for that reason could not grant the relief sought in that case, any more than the district court. The court in Louisiana acquired jurisdiction, as I have heretofore shown, of the bankrupt and of all his creditors, and might, perhaps, be said to be exclusively the tribunal to adjust all matters between them, and upon that ground it might properly have been dismissed. But the Louisiana court did not, as hereinbefore stated, get jurisdiction, by the proceedings in bankruptcy there, either of the bankrupt's debtors, or of persons holding his property by adverse claims. A new proceeding in favor of the assignee would be necessary even in that court, in order to get jurisdiction of them—i. e., by the service of process as in ordinary suits at law or equity; so the question as to whether such a suit might not have been maintained in New York was not before the court. I regard what was said, therefore, as not said in reference to the question now under consideration, and as not binding, nor entitled to the consideration of a decision made upon the point presented in this case. I am not prepared to say that that case was not properly dismissed, but upon other grounds and for other reasons than exist in this case. The next case in order of time was the case of Markson v. Heaney [Id. 9,098], in the United States circuit court of Minnesota. That was the case of a bill filed by an assignee, appointed in Kansas, against a party in Minnesota to restrain the foreclosure of a mortgage given by the bankrupt upon property situated in Indiana. The opinion is delivered by Dillon, J. The question, he says, was not raised by either party in the argument, and he says at its conclusion, "I therefore express my first impressions concerning it." I do not consider that as the final and deliberate opinion of the learned judge on the question, and think he would not feel bound by it himself as such. The question there, however, was only as to the jurisdiction of the circuit court under the second section of the act, and he did not attempt to define the extent of the jurisdiction of district courts as conferred by the first section, nor does he refer to the opinions under the former act upon the question that I have

cited, nor to any case except that of In re Richardson, supra; so I am satisfied that it should be received as only the "first impression" of the learned judge, formed without argument or deliberate consideration.

The next case is Shearman v. Bingham [Case No. 12,733]. That presents the identical point involved in this case, and it was ruled that the court had not the jurisdiction. Judge Lowell referred to, but declined to follow, the opinion of Judge Story in Ex parte Martin [supra], as well as that of Judge Prentiss, in Moore v. Jones [supra], though he says the difference between the two acts is hardly to be distinguished. In Dwight v. Ames [Case No. 4,965], the same judge says that section 1 of the present act is identical with section 6 of act of 1841, except the present goes further and adds some new powers, which he enumerates, and among which is the express power to collect assets. He adopts the views of the judges in Re Richardson and Markson v. Heaney, above cited. He does not seem to recognize any difference between the jurisdiction conferred upon the circuit courts and the district courts, and treated the question upon the theory that the jurisdiction granted by the first section did not relate to suits at law or in equity between the assignee and third persons; "that," as he says, "being regulated by section two."

This is the point of difference, and if he is correct, a suit cannot be brought in any district court, not even the one where proceedings are pending for the recovery of a debt due the bankrupt, for the jurisdiction conferred by the second section relates only "to suits at law or in equity, which may or shall be brought by the assignee against any person claiming an adverse interest, or by such person against such assignee touching any property or rights of property of said bankrupt transferred to or vested in such assignee." That jurisdiction is limited to the subject-matter stated, and to persons setting up adverse claims thereto. Morgan v. Thornhill [11 Wall. (78 U. S.) 65]. That does not authorize either the circuit or district courts of any district to entertain suits by the assignee to collect debts due to the bankrupt's estate. Such suits cannot be maintained in the circuit courts, as held in Woods v. Forsythe [Case No. 17,992]; and if suits for the collection of debts cannot be maintained in the circuit courts under the jurisdiction thereby conferred, they cannot be in the district courts, if they derive their power to entertain such suits at law only under that section, for the jurisdiction conferred by that is only concurrent; so, according to the construction of the learned judge, a suit to collect a debt is not maintainable in any district court, and there is, therefore, no need of distinguishing between districts. But he evidently does not mean that, for he says, "The true meaning of the law is that I have jurisdiction of such actions as this only when the bankruptcy is here." But where does he get such jurisdiction from, if section 1 does not relate to suits at law or in equity between the assignee and third persons? If the jurisdiction exists it is by virtue of the powers granted by section 1. It is provided in that section that the "jurisdiction hereby conferred shall extend to the collection of all the assets of the bankrupt." I do not think that congress intended by that, that debts were to be collected only by moral suasion. If not, what other way is there to collect them than by action commenced by due process of law, where debtors do not voluntarily pay, and when the law makers confer the power to collect they necessarily include the right to do it by due process of law. The learned judge has failed to satisfy me, notwithstanding his opinion is carefully prepared, and ably sustains his theory that he has arrived at the true meaning of the act. Nor do I think he answers or explains away the positions and argument of Judge Story, on the same point. I think he was not entirely satisfied with its soundness himself, for he says he should not regret to see the decision overruled, because of the inconvenience that might result from it in the administration of the act. His theory about using the state tribunals in aid of the administration of the act I have shown to be questionable under the constitutional power of congress, and practically very uncertain, as the state might at any time deny the right to the use of their tribunals in such cases, and neither congress or the federal courts could prevent it. But as to whether suits to collect the assets can be maintained in the state courts, I am not called upon now to express an opinion. All I have meant to say is that congress cannot impose that duty upon them. He refers, in support of his position, to the eleventh section, which provides that proceedings in bankruptcy must be commenced in the district where the bankrupt resides. That fixes the venue for commencing the proceedings in bankruptcy, and prescribes the contents of the process for acquiring jurisdiction of the proper parties to the bankruptcy proceedings, but it does not require all the acts and proceedings, necessary to be done or taken "in virtue of the bankruptcy," such as suits at law or in equity, to be prosecuted in that district. If it had been so intended, it would doubtless have authorized the issuing of process from that district to the marshal of any and every district where a necessary defendant in such suits might reside, so as to bring him into that court. Section 7 of the act of 1841 provided "that all proceedings in the case to the close thereof" should be had in the district where the bankrupt resides. Yet Judges Story and Prentiss made the decisions I have before mentioned without referring to it at all. That was not, however, re-enacted. But it is evident that section 11 relates to the proceedings against the bankrupt, the action, orders and directions of the court in the bankruptcy proceedings proper, and not to suits

against third persons growing out of the proceedings; so that it ought not to have any influence in determining the questions involved in this case. I have shown, I think, that the reasoning of the learned judge goes too far—does not stop when he does. It goes to show that congress has failed to confer jurisdiction upon any federal court to entertain a suit for the collection of the debts due the bankrupt's estate, so that the question of distinction attempted to be sustained between the authority of the different districts is wholly immaterial.

Judge Nixon, of the New Jersey district court, has adopted Judge Lowell's views, and held in Jobbins v. Montague [Case No. 7,330] that a suit in equity cannot be maintained in a district court other than where the bankruptcy proceedings are pending. That was a suit of the class of which a circuit court has concurrent jurisdiction under section 2. The learned judge, in stating his own reasons, confines himself principally to two phrases in the first section: First, that the original jurisdiction conferred is "given to the district courts in their respective districts in bankruptcy proceedings;" and, second, that such courts "are authorized to adjudicate, etc., according to the provisions of the bankrupt act." It occurs to me that he attaches undue weight to those phrases. It seems to me if they were both omitted the sense of the section would not be materially changed; for the district courts cannot, by any law that I know of, exercise jurisdiction out of their respective districts. Their jurisdiction is and always has been restricted to the territorial limits of the district. And if the second phrase was omitted, could the courts exercise the jurisdiction in any other way than "according to the provisions of the act?" Are not the provisions of the act as binding upon the courts without that clause as with it?

My understanding is that the courts are bound by the provisions of all acts of congress, and that a declaration in the act that they are to be governed by them, would not in the least change the obligation or action of the court in respect to the law. As an instance of the obligatory operation of that clause he also cites the eleventh section, which provides where proceedings shall be commenced. If that phrase was omitted altogether, could the proceedings be commenced in any other district than that provided in section 11? He also suggests as warranting the strict construction that he seems to understand he is giving to the act, that "the bankruptcy courts are mere creatures of the statute." It seems to me that his views in that respect do not accord with the general principles, purposes, and theory of the system.

Congress is authorized by the constitution to adopt a uniform system of bankruptcy, which it has done, and clothed the several district courts with original jurisdiction to administer it. Now to hold that the powers of such courts are to receive a strict construction is not, it seems to me, according to the generally received doctrine of courts in such cases. Such an act is properly denominated "remedial," and should therefore receive a generous and liberal interpretation, which embraces and extends to the provisions conferring upon the courts jurisdiction to execute it, as well as to the other parts. Would the learned judge apply that construction to the district court when sitting in admiralty? If not, why? It is constituted a court of admiralty by statute, and is a creature of the statute in the same sense that it is when sitting in bankruptcy. He also undertakes to draw support for his restricted meaning from the language of the second section. I have hereinbefore attempted to show that no such use could be made of section 2; that that section relates to the proceedings in, and the jurisdiction to be exercised by, the circuit courts, and does not profess to regulate or interfere with the jurisdiction of the district courts, and like Judge Lowell, he also deplores the construction that he feels constrained to place upon the act, as he anticipates that embarrassments may result therefrom in its administration.

I avoid all such regrets and doubtful apprehensions by simply following the construction placed upon the act of 1841 by Justice Story, and which, I am more and more convinced, was approved by congress, as in preparing the present act they copied into it from his opinions several of the clauses in reference to the extent of the jurisdiction of the district courts, and particularly the one "to the collection of all the assets of the bankrupt;" so that congress must, as a question of fact, not merely presumption, have been familiar with his opinions upon that subject, and also with the opinions that congress did not possess the power to cast upon the state courts the duty or authority to execute any part of the act.

Judge Miller, of the Eastern district of this state, has repeatedly decided that the district courts have jurisdiction in cases exactly like this; that the general clause or grant of authority to collect the assets does not refer alone to the court where the bankruptcy proceedings are pending, but to the district courts generally, and authorizes the assignee to sue in any district court; that such cases may be said to be cases arising under the laws of the United States and within the judicial power as declared by the constitution of the United States.

It was suggested by the counsel for the defendant on the argument, that as the bankruptcy proceedings, out of which this case arises, were by the act dividing this state into two districts and organizing this district, declared to remain in the eastern district, and that as by that act jurisdiction, in all unfinished cases, was retained in that district, the assignee might commence suits

in that court against parties residing in this district.

I do not think that position can be sustained, for according to my theory of the act, which I have hereinbefore attempted to maintain, a suit against a third person for the collection of the assets, is not a proceeding in the bankruptcy case proper. That, although it may be said that such suits grow out of it, or are "acts done in virtue of the bankruptcy," yet they are not a part of the proceedings, so as to·authorize the prosecution of such suits in that district.

The bankrupt and his creditors are required to attend to the case in that court, as they are regarded as parties to those pro-·ceedings, and all orders touching their rights and the administration of the estate can alone be made there, but that cannot include suits at law or in equity against third parties that are required subsequently to be brought for the collection of the assets.

Such a course would be contradictory of and antagonistic to the theory and general purposes of the law, as I have heretofore explained it, and would be very unjust to the defendant in this suit, and other defendants in various other cases now pending herein, as it would subject them to largely increased costs without any corresponding benefit. This being an action by the assignee of a bankrupt mutual insurance company to collect the premium note given by the defendant, a member of the company, it was not of such a character, or for such an amount as predisposed my mind to a favorable disposition of the case for the plaintiff, and I would gladly have turned the plaintiff over to proceed in some of the inferior tribunals of the state to collect this class of debts, but I could not see that I had any right to do so under the law. Such matters cannot be taken into consideration legitimately, however, in construing an act or as changing an otherwise correct construction.

I think the interpretation I have adopted is in harmony with the general spirit of the act, and gives to it its proper scope and efficiency, and it certainly has the support and concurrence of many of the most learned and distinguished judges of the federal courts, from whose opinions on the subject I have hereinbefore liberally quoted.

In the result finally reached, I have designed giving to the act its most natural and obvious meaning, and have only drawn such inferences therefrom as are sanctioned by the known and accepted rules governing the interpretation of statutes in like cases. I therefore direct a judgment for the plaintiff.